HONORABLE LAUREN KING

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

DARRYL SMALL and RAYMOND PATEE, *individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

MULTICARE HEALTH SYSTEM D/B/A MULTICARE,

Defendant.

CASE NO. 3:24-cv-05552-LK

**PLAINTIFFS' OPPOSITION TO DEFENDANT MULTICARE HEALTH SYSTEM'S MOTION TO DISMISS AMENDED COMPLAINT**

**NOTE ON MOTION CALENDAR: JANUARY 21, 2025**

**ORAL ARGUMENT REQUESTED**



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 2

FACTUAL BACKGROUND ........ 4

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

I. PLAINTIFFS ALLEGE INJURY-IN-FACT TO ESTABLISH STANDING........ 6

II. PLAINTIFFS STATE VIABLE CLAIMS FOR RELIEF ........ 7

A. The rationale in *Nienaber* does not support dismissal of Plaintiffs' claims. ........ 7

B. Plaintiffs allege an ECPA claim because MultiCare intercepted or transferred Private Information. ........ 9

C. Plaintiffs state a viable claim for breach of implied contract. ........ 12

D. Plaintiffs sufficiently allege breach of fiduciary duty. ........ 13

E. Plaintiffs state a claim for unjust enrichment. ........ 14

F. Plaintiffs allege all elements for negligence. ........ 16

1. Duty is well-pleaded and derived from Washington law. ........ 16

2. Plaintiffs plead MultiCare's breach. ........ 19

3. Plaintiffs allege recoverable damages. ........ 19

G. Plaintiffs' invasion of privacy claims should proceed. ........ 20

H. Plaintiffs allege a claim under the Washington Consumer Protection Act. ........ 23

I. Plaintiffs state a claim under the Washington Medical Malpractice Statute. ........ 25

CONCLUSION ........ 26




**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

## PRELIMINARY STATEMENT

This case centers on the proposition that individuals who use their healthcare providers' websites have a reasonable expectation of privacy when they seek information or book appointments regarding their sensitive medical conditions. Federal and state law recognize the importance of data security and privacy in confidential healthcare communications and prohibit the unauthorized interception and disclosure of healthcare information without informed consent.

Defendant MultiCare Health violated its patients' trust and the law by secretly embedding Meta and Google Collection Tools[1] on its website (https://www.multicare.org/, "Website") and patient portal (https://www.multicare.org/patient-resources/mychart/, "Patient Portal") (collectively, "Web Properties") to intercept Plaintiffs' communications concerning their personally identifiable information ("PII") and protected health information ("PHI," and with PII, "Private Information"). *See, e.g.*, ¶¶ 10-14.[2] Once MultiCare installed Meta and Google Collection Tools on its Web Properties, it configured specific settings regarding the precise types of information that it wanted to acquire, and MultiCare availed itself of the marketing and analytics insights and opportunities provided by the surreptitious tracking of its patients. *See, e.g.*, ¶¶ 316-30; *see also Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person[.]").

MultiCare does not dispute deploying Meta and Google Collection Tools but instead attempts to escape liability by claiming that it cannot be responsible for Plaintiffs' voluntary use

---

[1] The Facebook tracking and data collection tools include the Meta Pixel, Meta SDK, Meta Conversions API, customer list uploads, social plug-ins, the Meta Graph API, server-to-server transmissions and similar collection tools (collectively, "Meta Collection Tools"). The Google tracking and collection tools include Google Analytics, Google Tag Manager, DoubleClick, social plug-ins, server-to-server transmissions and similar collection tools (collectively, "Google Collection Tools").

[2] All paragraph citations are of Plaintiffs' First Amended Complaint, Dkt No. 16 (the "FAC").



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

of its Website and that Plaintiffs cannot be harmed because its Website is available to Plaintiffs "as it was to any other internet user." MultiCare makes no such argument about its Patient Portal. The fact that the Website is accessible to any internet user does not excuse or justify the surreptitious collection and disclosure of sensitive Private Information, which was provided in confidence to MultiCare. Plaintiffs did not intend on using the Web Properties to share their Private Information with unauthorized third parties. Further, Plaintiffs allege actual injury conferring Article III standing because their specific Private Information was disclosed by MultiCare to third parties without consent to facilitate marketing and targeted advertising—a classic invasion of privacy routinely recognized as conferring Article III standing.

MultiCare's reliance on *Nienaber v. Overlake Hospital Medical Center* supports Plaintiffs as the court held "[t]he collection and transmission of information from unauthenticated web pages (*i.e.*, pages that do not require a user to log in to access the website) ***may be actionable*** as well if the information disclosed demonstrates that plaintiff's interactions ***plausibly relate to the provision of healthcare***, or if the information connects a particular user to a particular healthcare provider (*i.e.*, patient status)." 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024) (emphasis added). Relatedly, Judge Chun recently denied a motion to dismiss an Electronic Communications Privacy Act ("ECPA") claim based on allegations "that Costco collected information about their searches for specific prescription drugs, health insurance coverage, and location." *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *7 (W.D. Wash. Nov. 14, 2024).

To date, approximately seventy federal and state court decisions have denied similar motions where the pleadings explained the defendants' purposeful violation of HIPAA and federal or state law. *See, e.g.*, *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024); *E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *2-10 (N.D. Cal. Feb. 12, 2024); *Kurowski v. Rush Sys. for Health* (*"Kurowski IV"*), 2024 WL 3455020, at *6 (N.D. Ill. July 18, 2024) (denying



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

motion for judgment on the pleadings);[3] *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 975 (S.D. Cal. 2023) (denying motion to dismiss state law claims, later remanding for lack of federal jurisdiction).

Plaintiffs' remaining claims withstand a motion to dismiss. MultiCare breached its fiduciary duty, was negligent, and invaded Plaintiffs' privacy by disclosing Plaintiffs' Private Information submitted on its Web Properties without informed consent. Plaintiffs plead damages resulting from MultiCare's breaches including loss of privacy and diminution in value of their Private Information. Worse, MultiCare's actions were in direct violation of its representations in its Notice of Privacy Practices that it would "only" share Plaintiffs' PHI for marketing purposes with authorization. The motion to dismiss should be denied in its entirety.[4]

## FACTUAL BACKGROUND

Darryl Small and Raymond Patee are Washington residents and patients of MultiCare. From at least November 2019 to present, Plaintiff Small accessed MultiCare's Web Properties to make appointments and exchange messages with his providers, fill out questionnaires requested by his providers, request referrals for specific health issues, refill prescriptions, update medication information and check test results. ¶¶ 331-33. Plaintiff Small used MultiCare's Web Properties to (i) communicate regarding dosage changes and prescription refills for his Attention Deficit/Hyperactivity Disorder medication, (ii) seek treatment for and communicate regarding gastroesophageal reflux disease symptoms, (iii) exchange messages about prescription refills for to treat his shoulder and (iv) pay medical bills. ¶¶ 334-36. Following his visits to MultiCare's Web Properties, Plaintiff Small received targeted ads related to shoulder replacement services, pain-

[3] MultiCare instead relies on outdated opinions from *Kurowski v. Rush Sys. for Health* ("*Kurowski II*"), 2023 WL 4707184, at *4 (N.D. Ill. July 24, 2023), and *Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *3 (S.D. Cal. July 12, 2023). *See* MTD at 5.

[4] Plaintiffs withdraw their claims for breach of express contract (Count II) and breach of implied duty of good faith and fair dealing (Count III) without prejudice.



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

relieving and anti-inflammatory medications and certain medical tests. ¶ 347.

Plaintiff Patee accessed MultiCare's Web Properties from at least 2022 to present to make appointments and exchange messages with his providers, fill out questionnaires requested by his providers, request referrals for health issues, refill prescriptions, update medication information and check medical test results. ¶¶ 355-57. Plaintiff Patee submitted information to MultiCare's Web Properties about his bladder and prostate health including by exchanging messages about receiving prescription refills for medications and paying his medical bills. ¶¶ 358-59. Following his visits to MultiCare's Web Properties, Plaintiff Patee received targeted ads on Facebook and YouTube about medications associated with the symptoms he sought treatment for. ¶ 369.

**LEGAL STANDARD**

In deciding a motion to dismiss for lack of standing under Rule 12(b)(1), the court "must accept as true all material allegations in the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citation omitted). "At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss [the court must] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted). And, under Rule 12(b)(6), the claims asserted in the FAC withstand dismissal for failure to state a claim where plaintiffs plead "enough facts to state a claim [for] relief that is plausible on its face." *In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935, 942 (N.D. Cal. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023).

///

///



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

## ARGUMENT

### I. PLAINTIFFS ALLEGE INJURY-IN-FACT TO ESTABLISH STANDING.

Despite the well-pled allegations detailing Plaintiffs' specific damages, MultiCare challenges Article III standing. To have standing, Plaintiffs must show (i) an injury in fact; (ii) traceable to MultiCare; that is (iii) redressable by judicial relief. *See Lujan*, 504 U.S. at 560. MultiCare contests only the first two elements, *see* MTD at 7-8, but even a cursory review of the FAC reveals that MultiCare's arguments regarding harm and traceability are meretricious.

In similar cases concerning the use of tracking technologies by healthcare entities to collect and disclose patients' Private Information, courts have found standing. In *C. M. v. MarinHealth Medical Group, Inc.*, the court explained that "where plaintiff alleges that soon after visiting defendant's website he started to receive ads targeted to his medical conditions .... This allegation suffices for Article III standing." 2024 WL 217841, at *2 (N.D. Cal. Jan. 19, 2024). Likewise, in *Smith v. Loyola University Medical Center*, the court rejected the exact arguments brought here, finding "plaintiffs have adequately pleaded injury-in-fact based on the alleged disclosure of their medical information[.]" 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024); *see also Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *1 (N.D. Cal. Mar. 19, 2024) ("The alleged unauthorized disclosure of sensitive medical information in this manner is akin to the harm of intrusion upon seclusion, which is an intangible harm traditionally recognized as a concrete harm."). Additionally, MultiCare's reliance on *Roper v. Rise Interactive Media & Analytics, LLC* supports Plaintiffs, as that court found traceability where defendant failed to prevent a data breach. *See* MTD at 8 (citing 2023 WL 7410641, at *5 (N.D. Ill. Nov. 9, 2023)).

Contrary to MultiCare's arguments and the cases it relies on,[5] Plaintiffs have identified

[5] MultiCare relies on *In re BPS Direct, LLC*, where the court held that plaintiffs did not disclose medical diagnosis information. MTD at 8 (citing 2023 WL 8458245, at *13 (E.D. Pa. Dec. 5, 2023)). But here, Plaintiffs allege that they made appointments, checked test results, submitted prescription requests and reviewed their medical conditions.



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

concrete, particularized harm traceable to MultiCare sufficient to confer standing. Plaintiffs allege that their Private Information was disclosed by MultiCare to third parties without Plaintiffs' "knowledge, consent, or express written authorization." ¶¶ 344 & 366. Plaintiffs allege when they used MultiCare's Web Properties, the Private Information they input on Defendant's Web Properties, and that they were targeted with ads relating to their same medical conditions. ¶¶ 331-36, 347, 355-59 & 369. Plaintiffs' harms are not speculative as they have already received targeted advertisements and allege (i) invasion of privacy; (ii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the disclosure of Private Information; (iii) loss of benefit of the bargain; (iv) diminution of value of Private Information; and (v) continued and ongoing risk to Private Information. ¶¶ 351 & 373. Thus, Plaintiffs' allegations are sufficient to show concrete injury. *See, e.g.*, *In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("Violations of the right to privacy have long been actionable at common law."); *Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *4 (collecting cases).

## II. PLAINTIFFS' STATE VIABLE CLAIMS FOR RELIEF.

Plaintiffs have adequately pled their claims for relief and MultiCare's Rule 12(b)(6) challenge should be rejected.

### A. The rationale in *Nienaber* does not support dismissal of Plaintiffs' claims.

MultiCare argues that this Court should adopt the holding from *Nienaber*—a case where the operative complaint has since been amended and is pending a decision on a motion to dismiss. *See* 2:23-cv-01159, ECF Nos. 54-56. As explained further with respect to each cause of action, Plaintiffs' allegations regarding their use of the Website and their concomitant harms are much more extensive than those in *Nienaber* and must be analyzed independently.

First, here, Plaintiffs' factual allegations are more detailed than those in *Nienaber* and therefore, sufficient to withstand a motion to dismiss. *See, e.g.*, ¶¶ 333-37 & 357-59. In *Nienaber*, the plaintiff failed to include sufficient factual allegations, pleading "only two sentences ... that



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

describe her actual engagement with Defendant's website." 733 F. Supp. 3d at 1082. There, the court held that "the transmission of information submitted to a private patient portal," such as clicking the login button, "reveals patient status, which in and of itself is protected health information," while "[t]he collection and transmission of information from unauthenticated web pages (*i.e.*, pages that do not require a user to log in to access the website) may be actionable as well if the information disclosed demonstrates that the plaintiff's interactions plausibly relate to the provision of healthcare, or if the information connects a particular user to a particular healthcare provider (*i.e.*, patient status)." *Id.* That is exactly what Plaintiffs allege here—MultiCare disclosed to Meta and Google that Plaintiffs were seeking medical treatment, the health conditions and treatments sought, the bills they paid, the test results they viewed and the appointments they booked. ¶¶ 333-37 & 357-59. *Nienaber* supports finding Plaintiffs' claims adequately pleaded.

Additionally, Plaintiffs have pleaded damages and actual harm including suffering loss of privacy, lost time and opportunity costs, loss of benefit of the bargain, diminution of value of Private Information, emotional distress, infiltrations into privacy through spam and targeted advertising and continued and ongoing risk to Private Information. ¶¶ 351, 373, 443 & 519. The court in *Nienaber* explained that the collection and transmission of information to third parties is actionable where it "plausibly relate[s] to the provision of healthcare, or ... connects a particular user to a particular healthcare provider"—which is exactly what Plaintiffs allege here. 733 F. Supp. 3d at 1082. These allegations are sufficient at the pleadings stage to establish damages. *See, e.g.*, *Doe v. Virginia Mason Medical Center* ("*Virginia Mason III*"), 2024 WL 3517759, at *5 (Wash.Super. June 06, 2024) (denying motion to dismiss based on argument of lack of damages); *Leonard v. McMenamins, Inc.*, 2022 WL 4017674, at *5 (W.D. Wash. Sept. 2, 2022) (same); *Toy*, 2024 WL 1701263, at *4 (allowing negligence to proceed after examining the economic loss rule).

Finally, Plaintiffs' voluntary use of MultiCare's Web Properties neither precludes their claims nor support MultiCare's argument that there can be no interception or invasion of privacy.



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

Plaintiffs' voluntary interactions were meant to share their Private Information with MultiCare, not to have their medical information shared with unauthorized third parties in violation of MultiCare's own Notice of Privacy Practices. *See, e.g.*, ¶¶ 222-35. Plaintiffs cannot be said to have "voluntarily" provided their Private Information when the Meta and Google Collection Tools employed by MultiCare were invisible to patients. ¶¶ 12 & 378. Plaintiffs had a reasonable expectation that the Private Information they shared with their physicians would be kept private. *See, e.g.*, *Doe v. Virginia Mason Medical Center* ("*Virginia Mason 1*"), 2020 WL 1983046, at *1 (Wash.Super. Feb. 12, 2020) (finding hospitals have a special relationship of trust and confidence with patients); *Virginia Mason III*, 2024 WL 3517759, at *7 (denying motion for summary judgment because "a reasonable inference to drawn from the facts presented is that [defendant] allowed health-related information to be shared with Facebook and Google and did so even though, at least at some point, it affirmatively said it would not share such information with third parties").

### B. Plaintiffs allege an ECPA claim because MultiCare intercepted or transferred Private Information.

The crux of MultiCare's argument is that there can be no ECPA liability because it was a party to the communications at issue. *See* MTD at 11-13. But where, as in this case, the crime-tort exception applies, that exception overrides the one-party consent rule:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication … ***unless such communication is intercepted for the purpose of committing any criminal or tortious act*** in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added). Criminal or tortious purposes may include "invading [a plaintiff's] privacy, defrauding her, or committing unfair business practices." *Deteresa v. Am. Broadcasting Cos., Inc.*, 121 F.3d 460, 467, n.4 (9th Cir. 1997) (cleaned up).

Plaintiffs allege that MultiCare intercepted their electronic communications to violate



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

HIPAA by collecting and disclosing their PHI and individually identifiable health information ("IIHI") without consent thereby tortiously and criminally invading their privacy. *Compare* MTD at 12-13, *with e.g.*, ¶¶ 425-33.[6] MultiCare's criminal and/or tortious actions are based on its decision to install Meta and Google Collection Tools to violate HIPAA, not simply to acquire generic internet history. *Compare* MTD at 12-13 (citing *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015), *with, e.g.*, *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (denying motion to dismiss ECPA claim where violation of HIPAA was alleged).

MultiCare's reliance on *Kurowski* to support its argument that this Court should follow *Nienaber* is misplaced. *See* MTD at 12. Initially, the *Kurowski* Court granted a motion to dismiss with leave to amend, but since then (and as the court in the *Nienaber* recognized), the *Kurowski* Court held the ECPA claim survived after the "complaint was amended to include 'additional factual allegations regarding the information [plaintiff] contends was transmitted to third parties with Rush's knowledge.'" *Nienaber*, 733 F. Supp. 3d at 1085 (citing *Kurowski v. Rush System for Health* ("*Kurowski III*"), 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023). After the decision in *Nienaber*, the *Kurowski* Court denied defendant's motion for judgment on the pleadings, holding that "Kurowski has plausibly alleged that Rush acted with the conscious desire to knowingly make unauthorized disclosures of her IIHI to Facebook, Google, and Bidtellect for purposes of invoking the crime-or-tort exception." *Kurowski IV*, 2024 WL 3455020, at *6.

Since *Nienaber*, Judge Chun denied a motion to dismiss an ECPA claim in a similar case and held that the crime-tort exception applied because "Plaintiffs allege that Costco not only intercepted their data but also used their data to generate targeted advertisements for financial gain." *Castillo*, 2024 WL 4785136, at *5 (collecting cases & acknowledging *Nienaber*). There, the

[6] Information is IIHI if it (i) is "created or received by" a health care provider and (ii) either "identifies the individual" or provides a reasonable basis to identify the individual. *See* ¶ 426 (citing 42 U.S.C. § 1320d-6(A)-(B)).



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

court distinguished cases that did not involve "health data that could implicate HIPAA." *Id.* at *6. The court went on to explain that "[a] more recent decision from the Southern District of New York involving the use of the Pixel to intercept health data joined other district courts in rejecting the proposition that the crime-tort exception is inapplicable when a defendant's purpose is financial gain." *Id.* (citing *Gay v. Garnet Health*, 2024 WL 4203263, at *3–4 (S.D.N.Y. Sept. 16, 2024) (collecting cases)); *see also Legacy Health*, 2024 WL 4794657, at *6 ("The Court agrees with the line of cases finding that violating HIPAA can constitute an independent criminal act for purposes of the carve-out to ECPA's party exception.").

Like *Castillo* and other decisions denying similar motions, Plaintiffs have alleged when they began using MultiCare's Web Properties; the specific health conditions, treatments sought, medical history, prescription information and other Private Information they shared with MultiCare; and the actions taken on the Web Properties, including researching their medical concerns and treatments, scheduling appointments and performing other tasks related to their medical inquiries, bill payment and treatment. *See* ¶¶ 331-76. Plaintiffs also allege their Private Information was received by MultiCare and identifies or provides a reasonable basis to identify them. *Id*. Thus, MultiCare's violations of HIPAA are sufficient to invoke the crime-tort exception.

Finally, whether MultiCare had criminal or tortious intent is a factual question not well suited for resolution on a Rule 12(b)(6) motion. *See, e.g.*, *Meta Platforms, Inc*., 690 F. Supp. at 1076 (explaining questions existed regarding "what steps [defendant] actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record"); *Kurowski III*, 2023 WL 8544084, at *3 (observing plaintiff "lacks the direct access to what occurs in the background on Rush's web properties").



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

**C. Plaintiffs state a viable claim for breach of implied contract.**

Plaintiffs allege that they entered an implied contract with MultiCare by using its Web Properties, pursuant to which MultiCare promised to "(a) provide healthcare to Plaintiffs and Class Members; and (b) protect Plaintiffs' and the Class Members' PII/PHI: (i) provided to obtain such healthcare; and (ii) created as a result of providing such healthcare." ¶ 491. Washington law recognizes two kinds of implied contract: implied in law and implied in fact. *Young v. Young*, 164 Wash. 2d 477, 483 (2008). A contract implied in fact "is an agreement depending for its existence on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other." *Id.* (citation omitted). Plaintiffs allege an implied in fact contract.

First, MultiCare's argument that its Privacy Notice is like its legal obligations under HIPAA does not mean there is no bargained for contract or meeting of the minds. *See* MTD at 13-14. Rather, "[a] privacy policy may give rise to an implied in fact contract if it contains an exchange of promises and consideration above and beyond the offeror's existing legal duties." *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *3 (M.D.N.C. Aug. 24, 2023). In addition to the HIPAA mandated Privacy Notice, MultiCare publishes additional privacy policies that represent that it will keep sensitive information confidential. ¶¶ 3 & 223 (citing Website Privacy Policy). Such independent assurances are sufficient to give rise to an implied contract. *See, e.g.*, *Attias v. CareFirst, Inc.*, 2023 WL 5952052, at *7 (D.D.C. Sept. 13, 2023) (separate promises to protect health information from disclosure, even though they "substantially overlap with, if not include HIPAA's requirements" sufficiently alleged existence of implied contract).

Plaintiffs also allege they paid MultiCare; specifically, they allege they "paid for the provided healthcare in exchange for, amongst other things, both the provision of healthcare and medical services and the protection of their Private Information." ¶ 456. Thus, MultiCare's reliance



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

on *Nienaber* is misplaced. *Compare* MTD at 14-15 (citing 733 F. Supp. at 1091 (explaining "Plaintiff has made no allegations that she paid Defendant for any medical services" & distinguishing cases finding consideration where plaintiffs paid for medical services), *with MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *4 (denying motion to dismiss implied contract claim where plaintiff paid for healthcare services).

Second, Plaintiffs allege that MultiCare breached their implied contract. *Compare* MTD at 15, *with* ¶ 499. Plaintiffs allege that "MultiCare materially breached its contractual obligation to protect the nonpublic Private Information MultiCare gathered when it disclosed that Private Information to Google and Meta through Meta and Google Collection Tools on its Web Properties." *Id*.

Finally, Plaintiffs allege cognizable damages. *Compare* MTD at 15, *with supra* § 2(A). The court in *Nienaber* recognized that paying for services may substantiate damages. 733 F. Supp. 3d at 1092 (dismissing claim because "as discussed above, Plaintiff has made no allegations that she ever paid Defendant, she has not alleged damages for her breach of contract claim"). Accordingly, Plaintiffs allege MultiCare's breach of implied contract.

**D. Plaintiffs sufficiently allege breach of fiduciary duty.**

MultiCare breached its fiduciary duty by disclosing patient information to third parties for advertising purposes without consent. *See, e.g.*, ¶¶ 524-28. "A physician owes an actionable fiduciary duty toward a patient." *Hansen v. Rogers*, 119 Wash. App. 1064, *7 (2003); *see also Omer v. Edgren*, 38 Wash. App. 376, 379 (1984) ("Washington also has characterized the relationship between physician and patient as fiduciary: 'The physician-patient relationship is of a fiduciary character. The inherent necessity for trust and confidence requires scrupulous good faith on the part of the physician.'").

MultiCare makes two arguments that improperly ignore or contradict Plaintiffs' allegations. First, MultiCare contends Plaintiffs did not allege sensitive PHI during the



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

doctor/patient relationship. *Compare* MTD at 16-17, *with* ¶¶ 333-37 (discussing Plaintiff Small's medical diagnosis and treatment requested from MultiCare); ¶¶ 357-59 (same for Plaintiff Patee). Second, MultiCare claims Plaintiffs' allegations that MultiCare was the guardian of their data, and therefore responsible for it, is insufficient without the word "custodian." *Compare* MTD at 17, *with e.g.*, ¶¶ 31, 241 & 524 (describing MultiCare as a guardian of data and its responsibility to safeguard PHI). Not so. MultiCare's remaining arguments are made only with respect to the public-facing website.

Here, MultiCare's obligation to safeguard confidential medical information transmitted via its Web Properties should not be controversial. *Compare* MTD at 17, *with, e.g.*, *Lockett v. Goodill*, 71 Wash. 2d 654, 656 (1967) (recognizing existence of a fiduciary duty between doctors and patients); *Virginia Mason I*, 2020 WL 1983046, at *1 (finding hospitals have a special relationship of trust and confidence with their patients). Courts in Washington and nationwide have found allegations like Plaintiffs sufficiently plead fiduciary duty. *See, e.g.*, *Hunter v. Brown*, 4 Wash. App. 899, 905 (1972) (finding allegations of a medical provider's failure to disclose all material facts which reasonably should be known if a patient is to make an informed and intelligent decision about their treatment is a breach of fiduciary duty); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 151 (D. Mass. 2024) (finding similar allegations sufficient for a breach of fiduciary duty).

**E. Plaintiffs state a claim for unjust enrichment.**

An unjust enrichment claim is well-suited to remedy MultiCare' acts of bartering Plaintiffs' valuable Private Information—submitted solely to obtain medical treatment—with Meta and Google in exchange for advertising services, without Plaintiffs' permission. Unjust enrichment "occurs when one retains money or benefits which in justice and equity belong to another." *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wash. App. 151, 160 (1991). Recently, in *Salem Health Hospitals and Clinics*, an Oregon district court declined to dismiss an unjust enrichment claim (with elements like Washington's) because "the benefit conferred was medical information of



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

patients; that Defendant took affirmative steps to collect it; and that it would be unjust for Defendant to retain the benefit from selling this information to advertisers. This amounts to a plausible claim for unjust enrichment." 2024 WL 3970796, at *7 (D. Or. Aug. 28, 2024); *see also Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 938 (D. Minn. 2024) (same in Minnessota); *Tenet Healthcare Corp.*, 2024 WL 1756075, at *5 (same in Massachusetts). While *Nienaber* found that the plaintiff lacked the specificity to plead this claim, 733 F. Supp. 3d at 1093-95, here, Plaintiffs support every element of it.

Plaintiffs satisfy the first element by alleging they paid MultiCare for medical services and conferred a benefit in the form of valuable sensitive medical information. ¶¶ 531-32. The value of Plaintiffs' benefit is quantifiable and is treated as currency in the digital marketplace. ¶¶ 286-315 (describing the market for medical information and the ability to quantify it).

Second, the transaction between Plaintiffs and MultiCare was severely imbalanced and—due to MultiCare's actions and inactions—intentionally secretive. After Plaintiffs conferred the benefit of their valuable PHI (as well as their PII), MultiCare bartered their data away in return for advertising services from Facebook and Google, among others. *See, e.g.*, ¶¶ 94-104 (explaining the exchange of Plaintiffs' PHI for Google's advertising services). Ultimately, MultiCare benefited from this arrangement by receiving compensation from Google and Facebook in the form of enhanced advertising services, as well as more cost-efficient marketing. ¶ 317.

Third, the circumstances of MultiCare's conduct demand that it make restitution. The injustice of Defendant keeping the profits of its illicit barter with AdTech companies is amplified by its affirmative representations and promises that it would *not share* Plaintiffs' PHI with third parties for marketing purposes. ¶ 226 (Notice of Privacy Practices: "All other information that is shared in a way not addressed in this notice, **including uses or disclosures for marketing purposes**, or disclosures of your information in exchange for some form of payment, will be made only after you give your written permission or as required by law.") (emphasis added). Each



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

Plaintiff read this notice "when he first became a patient of MultiCare and each time he visited the policy was presented for him to read and sign." ¶¶ 339 & 361. MultiCare betrayed those representations and promises intentionally; principles of equity instruct that MultiCare must be disgorged of ill-gotten gains.

Defendant's remaining authority is also distinguishable. In both *MCG Health* and *Craigslist*, the unjust enrichment claim failed because plaintiffs did not allege they entered into a transaction with the defendant. *See* MTD at 17-18. But here, Plaintiffs allege they directly transacted with MultiCare, ¶¶ 446-48 & 488-90, and that transaction underpins their claim.

Finally, MultiCare attempts to minimize the value patients place on data privacy with their medical providers by citing inapposite data breach cases brought against fast food companies. *See* MTD at 18 (citing *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Sup. 3d 1064, 1072 (N.D. Ill. 2016) & *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018)). Here, Plaintiffs plead that "[t]he services that Plaintiffs and Class Members ultimately received in exchange for the monies paid to MultiCare were worth quantifiably less than the services that MultiCare promised to provide[.]" ¶¶ 443 & 536. When Plaintiffs sought medical treatment from MultiCare and paid for healthcare, payment was made in exchange for both the provision of healthcare services and the protection of Private Information. ¶¶ 453-56. Considering the mishandling of Plaintiffs' PHI, the services MultiCare provided were worth quantifiably less than what Plaintiffs paid for the services. ¶¶ 535-37. Had Plaintiffs known this mishandling would occur, they would not have purchased these healthcare services. *Id*.

**F. Plaintiffs allege all elements for negligence.**

Plaintiffs adequately plead their negligence claim, and Defendant's arguments ignore Washington law and the well pleaded allegations of the FAC.



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

**1. Duty is well-pleaded and derived from Washington law.**

In *Nienaber*—the case Defendant asks this Court to adopt—the court recognized that plaintiff sufficiently alleged a duty in three distinct ways. First, *Nienaber* found a duty from the Health Care Information Act ("HCIA"). *See* 733 F. Supp. 3d at 1086 (explaining that as a patient, plaintiff was in the class of persons that the HCIA was designed to protect). While Plaintiffs do not expressly reference the HCIA, their allegations are the same—as a health care provider, MultiCare owes a duty to keep health care information confidential. ¶¶ 268, 278 & 507-514.

Under the HCIA, MultiCare owes that duty to Plaintiffs here. The HCIA recognizes that "[h]ealth care information is personal and sensitive information that if improperly used or released may do significant harm to a patient's interests in privacy, health care, or other interests." RCW 70.02.005(1). MultiCare's healthcare provider status creates a special relationship with patients who seek its care. That special relationship was created with Plaintiffs when they sought health services and put their trust in Defendant to provide such services while keeping their PHI secure. *See, e.g.*, ¶¶ 469, 482 & 509.

In addition, Plaintiffs allege duties based on HIPAA and Section 5 of the FTC Act—duties that mirror those of the HCIA. Healthcare organizations like MultiCare who collect PHI have a duty to maintain reasonable data security measures to safeguard confidential patient information, as well as a duty to not use tracking technologies to disclose PHI to advertising partners without consent. Violating those duties constitutes an unfair practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 and violate HIPAA. ¶¶ 26-27, 236-64 & 265-67. MultiCare's contention that these statutes do not provide a private right of action is irrelevant because Plaintiffs do not bring their actions under those statutes. Washington courts apply the Restatement test when determining whether a duty of care exists. *Schooley v. Pinch's Deli Market, Inc.*, 134 Wash. 2d 468, 474-75 (1998). This test poses an inquiry of whether the injured party is in the class of persons that the statute was designed to protect. *Id.* (citation omitted). As patients of MultiCare, Plaintiffs are in



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

the class of people that HIPAA and Section 5 of the FTC Act were designed to protect. Like the HCIA, both statutes independently provide duties to support a claim for MultiCare's negligence.

Second, *Nienaber* found plaintiff's allegation of defendant's misfeasance created a duty, stating, "[t]he intentional disclosure of personal information by Defendant to an unauthorized third party, as Plaintiff has alleged, constitutes an affirmative act, or misfeasance. 'It is foreseeable that providing a customer's private information ... creates a new risk of harm to the customer, particularly of identity theft or other fraudulent schemes based on the exploitation of such data.'" 733 F. Supp. 3d at 1087 (quotation omitted). Tracking the court's analysis in *Nienaber*, the FAC describes MultiCare's intentional disclosure of Plaintiffs' Private Information (including highly sensitive PHI) to unauthorized third parties Facebook and Google. ¶¶ 5, 15, 18-22, 48-67 & 94-104. Thus, Plaintiffs allege MultiCare's duties in two ways already recognized by *Nienaber*.

Third, *Nienaber* found a duty arising from its privacy notice making similar representations and promises that it would not share PHI with third parties without express authorization. *See* 733 F. Supp. 3d at 1087. Here, Plaintiffs plead the same representations and promises from MultiCare. ¶ 226. Thus, Plaintiffs plead all three varieties of duties already recognized by *Nienaber*, and only one duty is sufficient to plead the claim.

MultiCare's citation of data breach cases add nothing to the analysis as those cases dismissed negligence claims for lack of a special relationship where only financial transactions were involved. *See* MTD at 19 (citing *Buckley v. Santander Consumer USA, Inc.*, 2018 WL 1532671, at *5-6 (W.D. Wash. Mar. 29, 2018) (negligence claim brought by debtor against creditor) & *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F.Supp.3d 1140, 1157-58 (negligence claim brought by credit union against retail store)). In the healthcare provider-patient context, HIPAA and Section 5 of the FTC Act each make clear that there is a special relationship recognized under the law. ¶¶ 26-27, 251-53 & 266.



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

**2. Plaintiffs plead MultiCare's breach.**

MultiCare again misplaces its reliance on *Nienaber*. There, plaintiff's flaw was in her failure to allege what information she gave to defendant and what information was shared with third parties. *Nienaber*, 733 F. Supp. 3d at 1087. She also failed to allege that defendant shared information that could be used to identify her. *Id.*

In contrast, the FAC provides detailed facts about both Plaintiffs' medical conditions for which they sought treatment and the fact that they received ads related to those conditions after submitting their Private Information to MultiCare's Web Properties. ¶¶ 333-50 & 357-72. Plaintiffs also allege detailed information on the Meta and Google Collection Tools used on MultiCare's Web Properties and they can indeed be used to identify a person. ¶¶ 140-72. The fact that patients can be identified by Facebook and Google is what makes the data so valuable because once MultiCare transmits it to AdTech platforms those patients can be targeted based on their health conditions. ¶¶ 173-210. And this is exactly what happened to Plaintiffs. ¶¶ 227-35.

**3. Plaintiffs allege recoverable damages.**

Plaintiffs plead that MultiCare's negligence caused recoverable damages. Construed in the light most favorable to Plaintiffs, their allegations indicate sufficient evidence of injury.

As *Nienaber* found, "loss of privacy" is a compensable harm. 733 F. Supp. 3d at 1087. There, the court held the plaintiff did not allege this damage in the original complaint because it lacked specificity as to what information was shared and disclosed. *Id*. But here, Plaintiffs plead their specific medical conditions, that they requested prescription refills and made appointments for their conditions. ¶¶ 331-54 (Plaintiff Small's experience with the Web Properties) & 355-376 (same for Plaintiff Patee). Under *Nienaber*, Plaintiffs plead loss of privacy damages.

Plaintiffs also suffered compensable damages measured by the loss of value of their Private Information. The Washington Supreme Court has held that the injury requirement can be met where a property interest "is diminished" even if the amount is "unquantifiable." *Castillo*, 2024



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

WL 4785136, at *11 (allowing a CPA claim based on diminution in the value of personal information) (citing *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 57 (2009)); *Guy v. Convergent Outsourcing, Inc.*, 2023 WL 4637318, at *8 (W.D. Wash. July 20, 2023) (finding lost value of PII was sufficient to show an injury in a CPA claim).

Other courts have recognized that the diminished value of sensitive health or personal information supports common law claims in various data privacy contexts. *See, e.g.*, *In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014) (finding damages for breach of contract and fraud where plaintiffs alleged harm "both by the dissemination of their personal information and by losing the sales value of that information"); *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (similar); *In re Anthem Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (similar); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 717 (D. Minn. 2023) (health pixel context); *Garnet Health*, 2024 WL 4203263, at *7 (same); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information."). The inherent value of Plaintiffs' Private Information is the reason it was disclosed in the first place: MultiCare bartered away Plaintiffs' Private Information to third parties in exchange for better advertising and marketing services. ¶¶ 27, 35 & 317. Accordingly, Plaintiffs' negligence claim is plausibly pleaded and must move forward.

**G. Plaintiffs' invasion of privacy claim should proceed.**

Plaintiffs sufficiently plead a claim for intrusion upon seclusion, alleging they had a reasonable expectation of privacy and MultiCare intruded on their solitude, seclusion, and private affairs by utilizing Meta and Google Collection Tools to disclose Plaintiffs' Private Information to unauthorized third parties, which is highly offensive to a reasonable person. *See, e.g.*, ¶¶ 442 & 548-55. This is sufficient under Washington law. *Virginia Mason III*, 2024 WL 3517759, at



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

*7 ("[A] reasonable inference to drawn from the facts presented is that [defendant] allowed health-related information to be shared with Facebook and Google and did so even though, at least at some point, it affirmatively said it would not share such information with third parties"); *Convergent Outsourcing,* 2023 WL 4637318, at *7 (noting disclosure of medical information to unauthorized third party can suffice for invasion of privacy claim).

Defendant argues that because its intrusion was "carried out by third parties," Plaintiffs' claim fails, but accepting that argument would require this Court to ignore facts in the FAC. *Compare* MTD at 21-22, *with*, *e.g.*, ¶¶ 139 & 173-221. Plaintiffs plead that MultiCare—not Facebook or Google—intruded on Plaintiffs' seclusion by planting code on Plaintiffs' web browsers that instructed their computers to send their Private Information secretly and automatically to AdTech companies. ¶¶ 552-55. AdTech companies did not carry out the intrusion—MultiCare did. *See, e.g.*, *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 713-14 (finding installation of the Pixel and resulting transmission of patient healthcare data a "highly offensive" "intrusion"); *Cousin*, 702 F. Supp. 3d at 973-74 (same).

MultiCare also contends that Plaintiffs' claim fails because they voluntarily provided their Private Information to Defendant via its Website. MTD at 19. This contradicts Washington law and ignores the facts in the FAC. *Compare* ¶¶ 331 & 355 (explaining that Plaintiffs accessed MultiCare's Web Properties to receive healthcare services at Defendant's direction), *with Virginia Mason I*, 2020 WL 1983046, at *6-7 (finding allegations that defendant healthcare provider's disclosure of plaintiff's private information and online communications on its website was sufficient for an invasion of privacy claim); *Virginia Mason III,* 2024 WL 3517759, at *7.

Further, Plaintiffs cannot be said to have "voluntarily" provided their Private Information to Meta or Google when the tracking technologies employed by MultiCare were invisible to users and MultiCare made affirmative representations to its patients that it was not disclosing or selling PHI. ¶¶ 223-26. Also, as MultiCare's patients, Plaintiffs have a reasonable expectation that the



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

Private Information they shared with their physicians would be kept private. *See, e.g.*, *Lockett*, 71 Wash. 2d at 656; *Virginia Mason I*, 2020 WL 1983046 at *2-3 (hospitals have a special relationship of trust and confidence with patients); *Virginia Mason III*, 2024 WL 3517759, at *7.

*Kurowski IV* is distinguishable as the court there relied on language from an Illinois Supreme Court case stating that disclosures of private information did not establish the relevant tortious conduct. *See* 659 F. Supp. 3d at 943. MultiCare points to no comparable language under Washington law that would support its contention that it did not invade Plaintiffs' privacy. However, there is Washington caselaw supporting Plaintiffs' position. *See, e.g.*, *Virginia Mason I*, 2020 WL 1983046, at *1. This Court should deny Defendant's motion to dismiss Plaintiffs' intrusion upon seclusion claim.

Plaintiffs also plead a claim for public disclosure of private information. *See* ¶¶ 545-59. In contrast to the authority cited by MultiCare, the Washington Supreme Court has found that an invasion of privacy claim can be brought even if the matter was not broadly publicized. *Compare* MTD at 22, *with, e.g.*, *Reid v. Pierce Cnty.*, 136 Wash. 2d 195, 213 (1998) (approving an invasion of privacy claim premised on the Medical Examiner's Office employees' displaying of photographs of deceased persons); *Convergent Outsourcing, Inc.*, 2023 WL 4637318, at *6 (rejecting as "incorrect" the defendant's argument that the publication "must be to a large group": "It is enough to know the information was accessed and is likely being disseminated."). And unlike the plaintiffs in *Castillo* and *Nienaber*, Plaintiffs' allegations are not conclusory. *See*, *e.g.*, ¶ 32 (MultiCare acted "knowing that such technology would transmit and share Plaintiffs' and Class Members' Private Information with unauthorized third parties"); ¶ 20 ("transmitting the Private Information allows a third party (*e.g.*, Google or Meta/Facebook) to know that a specific patient was seeking confidential medical care"); ¶ 170 ("Facebook has read, understood, analyzed, and expressly taken action to match the shared PHI with specific individuals"). As such, Plaintiffs sufficiently plead their claim at this stage of litigation.



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

**H. Plaintiffs allege a claim under the Washington Consumer Protection Act.**

Plaintiffs sufficiently plead their claim under the Washington Consumer Protection Act ("CPA"). A CPA claim requires showing: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986). Because the CPA does not define "unfair" or "deceptive," Washington courts apply a liberal construction to the terms. *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1161-62 (W.D. Wash. 2017).

Plaintiffs plausibly allege that MultiCare engaged in unfair or deceptive acts through, among other practices, failing to secure Plaintiffs' Private Information in a confidential manner, misrepresenting that it would comply with common law and statutory duties to keep PHI confidential under HIPAA, misrepresenting that it would not share PHI with third parties for marketing purposes without consent, and failing to inform Plaintiffs of MultiCare's use of Meta and Google Collection Tools that did expressly what MultiCare represented it would not do and omitting and concealing those acts from Plaintiffs. ¶ 563. Moreover, Plaintiffs did not consent to MultiCare's use of their PHI for marketing purposes. ¶¶ 4, 33, 104 & 234-35.

MultiCare's conduct affects the public interest, because these deceitful practices have caused injury to Plaintiffs and have the capacity to injure other members of the public. ¶ 567. As a healthcare provider, Plaintiffs placed their trust in MultiCare, and members of the public will continue to do the same without being aware of Defendant's use of Meta and Google Collection Tools. Plaintiffs further allege injury in that the value of their property, their Private Information, diminished once it was no longer confidential. ¶¶ 286-315 (describing the value of Private Information) & 540 (describing Plaintiffs' lost profits due to the lost control and value of their Private Information). Finally, Plaintiffs plead that these losses were a result of Defendant's



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

intentional installation of Meta and Google Collection Tools that shared their Private Information with third parties and thereby devalued it. ¶¶ 443, 464 & 485.

In *Castillo*, this district found that plaintiffs stated a claim under the CPA in the health-pixel context. 2024 WL 4785136, at *10-13 ("Costco plausibly deceived the public by installing the Pixel to use and disclose customers' personal health data without their consent."); *see also Virginia Mason I,* 2020 WL 1983046 (finding similar allegations sufficient for a CPA claim); *Convergent Outsourcing*, 2023 WL 4637318, at *8 (defendant's failure to properly secure plaintiff's PII from unauthorized third parties, leading to plaintiff's injuries, was sufficient for a CPA claim); *Veridian Credit Union,* 295 F. Supp. 3d at 1162 (same); *Krefting v. Kaye-Smit Enterprises Inc*, 2023 WL 4846850, at *8 (W.D. Wash, July 28, 2023) (in a data breach context, "failure to take proper measures to secure [personally identifiable information] can constitute an unfair act under the [CPA].").

Asking this Court to disregard this case law and the pleaded facts, MultiCare argues that Plaintiffs' CPA claim must fail because they have not alleged that MultiCare transmitted their Private Information to Meta or Google. *See* MTD at 24. This is inaccurate as Plaintiffs provide great detail and explicitly allege that MultiCare transmitted their PHI to Meta and Google. *See*, *e.g.*, ¶¶ 16-22, 29, 102-104, 138 & 178. Defendant further argues (again) that even if Plaintiffs sufficiently alleged transmittal, Plaintiffs have somehow "voluntarily" permitted the disclosure of their Private Information to Meta and Google by using Defendant's Web Properties to receive healthcare, making any injury unavoidable. *See* MTD at 24 (citing *Beagle v. Amazon.com, Inc.*, 2024 WL 4028290 (W.D. Wash. Sept. 3, 2024)). Defendant ignores the pleaded facts that Plaintiffs' use of the Web Properties came with no knowledge or warning that MultiCare would distribute their Private Information to third parties for marketing purposes without consent, and indeed, Defendant promised and represented that it would not do so. ¶¶ 223-26. Further, *Beagle* involved consumers' voluntary use of shopping services—a far different context from the



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

"voluntary" use of a medical provider's Web Properties. *Compare* 2024 WL 4028290, at *4, *with, e.g.*, ¶¶ 331 & 355 (alleging that Plaintiffs used the Web Properties at Defendant's direction to obtain healthcare services).

As for causation, MultiCare merely recites the causation standard but does not offer a single case to persuade the Court that Plaintiffs' pleading is deficient. *See* MTD at 25. And as with its other arguments, MultiCare asks the Court to ignore the FAC. Plaintiffs plead in no uncertain terms that Defendant's decision to intentionally install Meta and Google Collection Tools in its Web Properties caused their Private Information to be secretly disseminated to third parties for marketing purposes—which it represented it would not do—and thereby devalued it. *See, e.g.*, ¶¶ 14-15, 443, 464 & 485.

Defendant's argument against damages follows the same meager tactic, and Plaintiffs' pleaded damages are sufficient at this stage of litigation. *Compare* MTD at 25, *with supra* § F(3). Accordingly, this Court should deny Defendant's motion to dismiss Plaintiffs' CPA claim.

**I. Plaintiffs state a claim under the Washington Medical Malpractice Statute.**

Washington courts recognize "a tort action exists under 7.70.030(1) for damages resulting from the unauthorized disclosure of confidential information related to health care and obtained within the physician-patient relationship." *Berger v. Sonneland*, 144 Wash. 2d 91, 101 (2001). Plaintiffs' assertion of a violation of RCW §§ 7.70 *et seq*. closely mirrors their negligence claim. MultiCare—Plaintiffs' healthcare provider—owed a duty to safeguard Plaintiffs' PHI. ¶¶ 572-74. MultiCare breached that duty and failed to follow the accepted standard of care by secretly transmitting Private Information to Meta and Google without Plaintiffs' knowledge or consent. *See, e.g.*, ¶¶ 572-78.

MultiCare baselessly argues Plaintiffs have not suffered any injury and Plaintiffs fail to allege any "express promise or obligation" was breached by MultiCare. *See* MTD at 23. Yet, Plaintiffs distinctly describe how MultiCare departed from the accepted standard of care by



**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

utilizing Meta and Google Collection Tools. *See, e.g.*, ¶ 574. Throughout the FAC, Plaintiffs further detail how MultiCare promised to not disclose their Private Information and then deliberately and secretly did the exact opposite. *See*, *e.g.*, ¶¶ 224 & 575.

Defendant again argues that Plaintiffs fail to state a claim because they interacted with the Web Properties voluntarily. *See* MTD at 26. But MultiCare's argument wholly ignores the fact that Plaintiffs relied on assurances made by Defendant that their Private Information would be safeguarded, and Plaintiffs never consented to having that information used for marketing purposes. *See, e.g.*, ¶¶ 224, 234-35 & 575. Accordingly, Plaintiffs fulsomely pleaded their medical malpractice claim.

## CONCLUSION

For these reasons, Plaintiffs respectfully request this Honorable Court to deny MultiCare's motion to dismiss in its entirety. Alternatively, the Court should grant leave to amend to address any pleading deficiencies.[7]

Dated: January 13, 2025

Respectfully submitted,

By: /s/ Samuel J. Strauss, WSBA #46971
Samuel J. Strauss, WSBA #46971
Email: sam@straussborrelli.com
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

**ALMEIDA LAW GROUP LLC**
David S. Almeida (*pro hac vice*)
849 W. Webster Avenue
Chicago, Illinois 60614

[7] "If the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Meta Platforms, Inc.*, 690 F. Supp. 3d at 1075 (quoting *Lopez v. Smith*, 203 F .3d 1122, 1127 (9th Cir. 2000)).

(708) 529-5418
david@almeidalawgroup.com

**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
Brandon M. Wise (*pro hac vice*)
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
(314) 833-4825
bwise@peifferwolf.com

Andrew R. Tate (*pro hac vice*)
235 Peachtree St. NE, Suite 400
Atlanta, GA 30303
(404) 282-4806
atate@peifferwolf.com

*Attorneys for Plaintiffs & the Classes*

**CERTIFICATION OF WORD COUNT**

I certify that this memorandum contains 8,295 words, in compliance with the Local Civil Rules.

Date: January 13, 2025

Respectfully submitted,

By: /s/ Samuel J. Strauss, WSBA #46971
Samuel J. Strauss, WSBA #46971
Email: sam@straussborrelli.com
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorneys for Plaintiffs & the Classes*