UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DARRYL SMALL et al.,<br><br>Plaintiffs,<br>v.<br><br>MULTICARE HEALTH SYSTEM,<br><br>Defendant. | CASE NO. 3:24-cv-05552-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

This matter comes before the Court on Defendant MultiCare Health System's motion to dismiss Plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 19. Plaintiffs oppose the motion. Dkt. No. 20. For the reasons set forth below, the Court grants the motion in part and denies it in part.[1]

## I. BACKGROUND

Plaintiffs Darryl Small and Raymond Patee filed this putative class action complaint in July 2024. Dkt. No. 1. After MultiCare filed a motion to dismiss, Dkt. No. 14, Plaintiffs filed an

[1] Because the matter can be decided based on the parties' filings, the Court denies the parties' requests for oral argument. Dkt. No. 19 at 1; Dkt. No. 20 at 1.

amended complaint, which is now the operative pleading, Dkt. No. 16. MultiCare is a Washington nonprofit corporation headquartered in Tacoma, Washington. *Id.* It "is a large health care delivery system" operating 12 hospitals, five neighborhood emergency departments, and over 290 primary care, specialty care, and urgent care clinics throughout Washington state. *Id.*

**A. MultiCare Uses Data Collection Tools**

The amended complaint contends that MultiCare violated Plaintiffs' medical privacy by using "tracking and data collection tools by Alphabet, Inc. d/b/a Google ('Google') and Meta Platforms, Inc. d/b/a Meta ('Meta')"—previously known as Facebook. *Id.* at 1–2 (citation modified).[2] They contend that MultiCare installed and used those data collection tools on both its public-facing website and its patient portal, also known as MyChart. *Id.* at 2, 38, 42. The data collection tools use pixels to "collect and transmit information from [u]sers' browsers to unauthorized third parties including, but not limited to, Google and Meta." *Id.* at 4. Pixels can track how a person interacts with a website, including "how long a person spends on a particular web page, which buttons the person clicks, which pages they view and the text or phrases they type into various portions of the website (such as a general search bar, chat feature or text box)." *Id.* In this way—according to Plaintiffs—MultiCare collected and simultaneously divulged to Google and Meta users' personally identifiable information ("PII"), individually identifiable health information ("IIHI"), and protected health information ("PHI"), *id.* at 2, 6–7, including the physicians they sought (with name and specialty), bill pay activities, and clicks to log in to MyChart to schedule an appointment, *id.* at 38, 40, 50, 56. Plaintiffs allege that the information transmitted to Google and Meta was "sufficient to identify a specific patient under federal law

[2] The Meta tracking and data collection tools include the Meta Pixel, Meta SDK, Meta Conversions API, customer list uploads, social plug-ins, the Meta Graph API, server-to-server transmissions and similar collection tools; the Google tracking and collection tools include Google Analytics, Google Tag Manager, DoubleClick, social plug-ins, server-to-server transmissions and similar collection tools. *Id.* at 2 n.1.

(such as IP address information, device identifiers, advertising identifiers that Meta associates with a patient's Facebook account and identifiers that Google associates with a patient's identity—including a unique cookie ID and their IP address)" and could "also include a patient's demographic information[.]" *Id.* at 5. MultiCare did not disclose to its patients that it shared their data this way, so Plaintiffs "were unaware that their PII and PHI were being surreptitiously transmitted to Facebook and Google as they communicated with their healthcare providers, looked up their conditions and treatments, and logged into the Patient Portal." *Id.* at 8–9.

According to Plaintiffs, after Google and Meta obtained the data, they forwarded it—along with their analysis of the data—to MultiCare. *Id.* at 59. "MultiCare then use[d] this data and analysis for its own commercial purposes that include[d] understanding how [u]sers use its Website and determining what ads [u]sers see on its Website." *Id.* That is, MultiCare used the information harvested by the data collection tools for marketing and analytics, including by targeting its patients with specific ads based on their health conditions. *Id.* at 70. MultiCare thus used its patients' data for marketing, despite promising in its privacy notice that "[a]ll other information that is shared in a way not addressed in this notice, including uses or disclosures for marketing purposes, or disclosures of your information in exchange for some form of payment, will be made only after you give your written permission or as required by law." *Id.* at 2.

### B. The Named Plaintiffs Allege that MultiCare Improperly Shared and Used Their Private Information

The individually named Plaintiffs allege that they were victims of MultiCare's data misuse. Plaintiff Small used the Patient Portal multiple times per year to make medical appointments, communicate with his providers, refill prescriptions, check medical test results, and pay his medical bills. *Id.* at 80. He contends that "MultiCare transmitted to Google and Meta [his] Facebook ID and Google 'cid' parameter cookie, IP address, other unique personal identifiers

including Meta and Google cookies, and information relating to his medical conditions, including test results." *Id.* at 81.[3] Small contends that each time he "made an appointment with a doctor using the Web Properties, information such as his appointment type, appointment date and time, and physician selected was transmitted to Facebook (and Google) along with his name, Facebook user ID, and other identifying information." *Id.* at 82.[4] And each time he "viewed his visit summary on the Portal after his appointments and reviewed or updated his prescription information," the name of the medication, along with the date he started taking the medication and the dosage prescribed, "were all transmitted to Facebook and Google along with h[is] name, Facebook user ID, and other identifying information." *Id.* at 82.

According to Plaintiffs, the information transmitted to Meta and Google revealed Small's medical conditions, including a shoulder injury, "and the fact that that he was seeking and received medical treatment from Defendant." *Id.* 81–82. Small contends that soon after he "disclosed his [p]rivate [i]nformation to MultiCare, he began to receive targeted ads related to his PHI, including ads about shoulder replacement services, pain relieving and anti-inflammatory medications, and certain medical tests." *Id.* at 81.

Plaintiff Patee also contends that the data collection tools transmitted information to Google and Meta about his appointment type, physician selected, name of mediation, and dosage, along with his name and other identifying information. *Id.* at 85. Plaintiffs allege that millions of individuals have had their PII and PHI wrongfully disclosed and used in the same way. *Id.* at 87.

Based on these allegations, plaintiffs assert claims for violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511,[5] breaches of express and implied

---

[3] Plaintiffs do not explain how test results could have been transmitted. *See generally* Dkt. No. 16.

[4] "Web Properties" include both the website and the patient portal. *Id.* at 2.

[5] ECPA updated the Federal Wiretap Act, 18 U.S.C. § 2511.

contracts, breach of the duty of good faith and fair dealing, negligence, breach of fiduciary duty, unjust enrichment, invasion of privacy, violation of the Washington Consumer Protection Act ("CPA"), and injury resulting from health care in violation of Section 7.70 of the Revised Code of Washington. *Id.* at 92–122. MultiCare has moved to dismiss all claims, contending that Plaintiffs lack standing and have failed to state a claim. Dkt. No. 19.

## II. DISCUSSION

### A. Jurisdiction and Standing

The Court has jurisdiction over this matter under 28 U.S.C. § 1331 based on Plaintiffs' assertion of an ECPA claim. The Court has supplemental jurisdiction over Plaintiffs' claims arising under state law under 28 U.S.C. § 1367(a) because their other claims are so related to the ECPA claim that they form part of the same case or controversy.

MultiCare contends that Plaintiffs lack standing because their amended complaint does not "identif[y] any concrete, particularized harm sufficient to confer standing," but instead alleges only speculative harm about unquantified "monetary damages" and loss of privacy. Dkt. No. 19 at 7–8. Plaintiffs respond that they have been injured because MultiCare collected and disclosed their health care information. Dkt. No. 20 at 7–8.

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). For standing purposes, therefore, an important difference exists between a plaintiff's *statutory* cause of action to sue a defendant and a plaintiff suffering *concrete harm* because of the defendant's alleged violation of law. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021). For an injury in fact

to exist, a defendant's actions must have "caused [a plaintiff] to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo v. Robins*, 578 U.S. at 338). Furthermore, "standing is not dispensed in gross;" rather, standing must be established "for each claim that [plaintiffs] press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 431. The Ninth Circuit has interpreted *TransUnion* to "require[ ] a court to assess whether an individual plaintiff" claiming harm based on an intangible injury "has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). When considering a motion to dismiss a complaint brought on behalf of a putative class, the court examines the standing of the putative class representatives. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016).

In the absence of Article III standing, a defendant may move to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) based on the lack of subject matter jurisdiction. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023). Jurisdictional attacks under Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Here, MultiCare mounts a facial attack. Dkt. No. 19 at 7–8. Plaintiffs' amended complaint alleges that soon after the unauthorized disclosure of their medical information, they began to receive targeted advertisements based on their specific medical conditions. Dkt. No. 16 at 81, 84. They also allege that as a result of the unauthorized disclosures, they have suffered "(i) invasion

of privacy; (ii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the disclosure of [their] [p]rivate [i]nformation; (iii) loss of benefit of the bargain; (iv) diminution of value of [their] [p]rivate [i]nformation; (v) statutory damages, and (vi) the continued and ongoing risk to [their] [p]rivate [i]nformation." *Id.* at 82, 85.

Violation of the right to privacy can constitute a traditional tangible harm because it has "long been actionable at common law." *Eichenberger v. ESPN*, 876 F.3d 979, 983 (9th Cir. 2017). Furthermore, violation of a statute that conveys a substantive right to privacy results in a concrete harm sufficient to confer standing. *Id.* at 983–84. The Ninth Circuit has held that sections 2511(1)(a) and (d) of ECPA—which MultiCare is alleged to have violated, as set forth below—codify substantive privacy rights, the violation of which is a concrete harm. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–19 (9th Cir. 2020). The Ninth Circuit has also held that alleged harm "consist[ing] of the unauthorized disclosure of sensitive facts about [plaintiffs'] health that they have entrusted Defendant to keep private" sufficed to establish standing because it "resemble[d] a breach of confidence and contract that courts have long understood as providing a basis for a lawsuit." *Black v. IEC Grp., Inc.*, No. 25-5952, 2026 WL 3031874, at *2 (9th Cir. Oct. 9, 2026). In addition, district courts have held that the disclosure of medical information in the manner described in the amended complaint and the resulting loss of privacy are traditional harms that suffice to establish Article III standing. *See, e.g.*, *Castillo v. Costco Wholesale Corp.*, No. 2:23-cv-01548-JHC, 2024 WL 4785136, at *12 (W.D. Wash. Nov. 14, 2024) (finding that plaintiffs established standing for purposes of a CPA claim); *Krefting*, 2023 WL 4846850, at *3 (finding "Plaintiff's allegations of actual misuse of his PII sufficient to state concrete injury under Article III"); *see also C.M. v. MarinHealth Med. Grp., Inc.*, No. 23-cv-04179-WHO, 2024 WL 217841, at *2 (N.D. Cal. Jan. 19, 2024) (finding that plaintiff sufficiently alleged standing when he alleged that he received ads targeted to his medical conditions after visiting defendant's website); *In re*

*Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (finding that an allegation "that the plaintiffs' sensitive information was disseminated to third parties in violation of their privacy" was sufficient to confer standing). Plaintiffs have thus established standing here. Having found that Plaintiffs have sufficiently alleged an injury in fact for Article III standing, the Court denies MultiCare's motion to dismiss all claims for lack of Article III jurisdiction.

**B. Rule 12(b)(6) Legal Standards**

Rule 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this standard, the Court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not, however, accept as true legal conclusions or "formulaic recitations of the elements of a cause of action." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation modified). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**C. Plaintiffs' ECPA Claim**

Section 2520 of ECPA provides a private right of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this

chapter." 18 U.S.C. § 2520(a). Here, Plaintiffs contend that MultiCare violated subsections (1)(a) (interception), (1)(c) (disclosure), and (1)(d) (use) of Section 2511, which apply to "any person who":

> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; . . .
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; [or]
>
> (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection[.]

18 U.S.C. § 2511(1)(a), (c)–(d); Dkt. No. 16 at 94–96.

To state a claim under ECPA, a plaintiff must show that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (quoting *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015)), *rev'd in part on other grounds sub nom. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). The statute broadly defines the term "intercept" to cover "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *See* 18 U.S.C. § 2510(4).

1. <u>The One-Party Consent Exception does not Defeat Plaintiffs' ECPA Claim</u>

MultiCare argues that Plaintiffs cannot state an ECPA claim due to the statute's one-party consent exception, which provides that "[i]t shall not be unlawful under this chapter for a person . . . to intercept a wire, oral, or electronic communication where such person is a party to the

communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d); Dkt. No. 19 at 11. There is no dispute that MultiCare was "the intended recipient" of Plaintiffs' transmissions, and "the intended recipient of a communication is necessarily one of its parties." *In re Google*, 806 F.3d at 143. Furthermore, section 2511(2)(d)—which also applies "where one of the parties to the communication has given prior consent to such interception," 18 U.S.C. § 2511(2)(d)—immunizes MultiCare for procuring third-party interceptions unless Plaintiffs have adequately pleaded that their communication was "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.*

To trigger the crime-tort exception and survive a motion to dismiss, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (emphasis added); *see also In re Google*, 806 F.3d at 145. That is, to invoke the exception, Plaintiffs must allege that MultiCare acted with a "criminal or tortious purpose [that is] separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); *see also Deteresa v. Am. Broadcasting Cos., Inc.*, 121 F.3d 460, 467 (9th Cir. 1997) (noting that the exception applies only if the defendant made the recording "for the purpose of committing any criminal or tortious act" (quoting 18 U.S.C. § 2511(2)(d)). "Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (citation modified) (holding that "where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, [the crime-tort exception] applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek

redress elsewhere”). The crime-tort exception still applies where there are two motivations for an interception—one lawful and the other not. *Id.* (“[T]he existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose.”).

MultiCare argues that “Plaintiffs do not plead tortious or criminal use, but merely that the data was used to target ads to themselves.” Dkt. No. 19 at 12; *see also* Dkt. No. 25 at 6–7. Plaintiffs contend that the exception applies because MultiCare collected and disclosed their PHI and IIHI to violate the Health Insurance Portability and Accountability Act of 1996 (“HIPAA”). Dkt. No. 20 at 10–11 (citing Dkt. No. 16 at 96–97). The Court agrees with Plaintiffs.

Plaintiffs allege that MultiCare intentionally violated 42 U.S.C. § 1320d-6(a)(3), a provision of HIPAA that imposes a criminal penalty for knowingly “disclos[ing] individually identifiable health information to another person.” 42 U.S.C. § 1320d-6(a)(3); *see also* Dkt. No. 16 at 96. Specifically, they allege that MultiCare disclosed their IIHI to third parties through the data tracking tools, including information sufficient to identify them and information about their patient status, bill paying activity, and medical conditions. Dkt. No. 16 at 18–19, 22–26, 30–57, 80–85, 96–98.[6] In other words, at the time MultiCare purposefully installed the data collection tools to *intercept* Plaintiffs’ communications, it did so with the purpose of *disclosing* their individually identifiable health information (“IIHI”) to Meta and Google to allow advertisers (including MultiCare and others) to make targeted outreach to Facebook and Google users such as Plaintiffs. Dkt. No. 16 at 18–19, 22 (explaining that the Facebook tracking pixel enables

---

[6] HIPAA defines IIHI as

> any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider . . . (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and— (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C. § 1320d(6).

advertisers on Facebook to build Lookalike Audiences—i.e., audiences that "leverage[] information such as demographics, interests, and behavior from [an advertiser's] source audience to find new people who share similar qualities" (citation modified)); *id.* at 23–26, 30 (Google's "Custom Audiences" functions in largely the same way, and because MultiCare did not enable IP masking, the Google Analytics tracker sent users' IP addresses to Google alongside their PHI). "Courts have widely recognized that an intention to violate Section 1320d-6(a) is an 'independent or secondary act' that can trigger the crime-tort exception." *Adair v. Cigna Corp. Servs.*, LLC, No. CV-25-2384, 2026 WL 2160444, at *10 (E.D. Pa. July 27, 2026); *see also Hartley v. Univ. of Chicago Med. Ctr.*, No. 22-CV-5891, 2025 WL 2802317, at *9 (N.D. Ill. Oct. 1, 2025) ("[C]ourts in this district and nationwide have held that '[a] disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA.'" (quoting *Stein v. Edward-Elmhurst Health*, Case No. 23-cv-14515, 2025 WL 580556, at *4–5 (N.D. Ill. Feb. 21, 2025) (collecting cases))).[7]

[7] *See also, e.g.*, *Adair*, 2026 WL 2160444, at *11 (holding that the crime-tort exception applied where plaintiffs plausibly alleged that defendants disclosed their identifiable health information to third parties by knowingly and deliberately deploying the pixel technologies on their site); *McClain v. Capital Vision Servs., LLC*, No. 1:25-cv-07675, 2026 WL 710926, at *4 (N.D. Ill. Mar. 13, 2026) ("the weight of authority . . . nationwide holds that a disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA" (citation modified)); *Ramirez v. LasikMD USA, Inc.*, No. 24-cv-2221-CAB-DDL, 2026 WL 194855, at *3 (S.D. Cal. Jan. 26, 2026); *Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552, at *5 (D. Ariz. Jan. 28, 2025) (finding that plaintiffs' allegations that defendant used pixels to capture IIHI and "packaged it with cookies created by Facebook to transmit both the medical information and identifying information to Facebook" was sufficient to plead that defendant "received and disclosed IIHI" and "intercepted the communications for the purpose of violating HIPAA"); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380–82 (S.D.N.Y. 2024) (applying the crime-tort exception where plaintiffs alleged a New York-area health system "knowingly and deliberately," "to improve its marketing," added tracking pixels to its website that disclosed patient PHI to third parties); *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) ("[A]lleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception."); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (allegation that defendant installed the Facebook Tracking Pixel and the Facebook Conversions Application Programming Interface on its website and sent Facebook individually identifiable information that plaintiffs had entered into defendant's website in violation of HIPAA established "intent on [defendant's] part to commit tortious or unlawful conduct at the time of interception as required to state an ECPA claim, making the application of the criminal or tortious conduct exception applicable"); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, at *3 (N.D. Ill. 2024 Sept. 9, 2024) (plaintiffs' allegations that defendant "placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of [HIPAA]" plausibly alleged that defendant "intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception"); *Mekhail v. N. Mem'l Health Care*, 726

Plaintiffs' allegations suffice to invoke the crime-tort exception because it is "[t]he disclosure, not the interception itself, [that] is the secondary act that supports the crime-tort exception." *Doe v. Deaconess Illinois Union Cnty. Hosp., Inc.*, 831 F. Supp. 3d 710, 725 (S.D. Ill. 2025)[8]; *see also Smart v. Main Line Health*, No. CV 22-5239, 2026 WL 1008171, at *3 (E.D. Pa. Apr. 14, 2026) ("After the Meta Collection Tools captured the contents of user communications, Main Line Health shared that information to allow marketers and advertisers to make targeted outreach to users. Just because those acts happen at nearly the same time does not mean the act is singular."); *I.T. v. ChoicePoint LLC*, C25-00193-KKE, 2025 WL 2495079, at *8 (W.D. Wash. Aug. 29, 2025) (noting that "an intent to disclose or use private information in violation of HIPAA is distinct from the interception of the private information").

Thus, the one-party consent exception does not defeat Plaintiffs' ECPA claim, and the Court denies MultiCare's motion to dismiss that claim.

**D. Breach of Express and Implied Contract; Breach of the Duty of Good Faith**

MultiCare seeks dismissal of Plaintiffs' claims for breach of an express or implied contract. Dkt. No. 19 at 13. It argues that Plaintiffs have not alleged the existence of a valid contract; instead, Plaintiffs point only to MultiCare's Privacy Notice, which is not a contract. *Id.* MultiCare also

---

F. Supp. 3d 916, 928 (D. Minn. 2024) (allegation that the Pixel allowed Meta to access plaintiffs' private health data in violation of state law and HIPAA "sufficiently plead[ed] an interception made with the purpose of violating one or more laws, independent from the act of interception itself").

[8] As the court notes in *Deaconess*, allegations that a defendant who provides medical services disclosed inquiries submitted on its website "are far from a sure thing in terms of their ability to fit within HIPAA's definition of IIHI because they do not claim that [the defendant] disclosed a condition that [the *plaintiff*] suffered from." *Deaconess*, 831 F. Supp. 3d at 723. But on balance, as in *Deaconess*, "the Court finds that a faithful application of the plausibility standard, with all inferences drawn in [the Plaintiffs'] favor, compels a finding that [they] sufficiently alleged the improper disclosure of [their] IIHI." *Id.* It is at least plausible that by causing Plaintiffs' information to be intercepted and disclosing such information to Meta and Google, MultiCare shared information that "related" to their health and could be used to identify them. 42 U.S.C. § 1320d(6) (defining IIHI to include "any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and—(i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.").

contends that Plaintiffs have failed to allege the existence of an implied contract, as well as a breach or resulting damages to support either contract theory. *Id.* at 14–15. In addition, MultiCare contends that absent an express or implied contract between the parties, there can be no breach of the implied duty of good faith and fair dealing. *Id.* at 15. Plaintiffs respond that they are alleging an implied in fact contract, Dkt. No. 20 at 13, and withdraw without prejudice their claims for breach of express contract and breach of the duty of good faith and fair dealing, *id.* at 5 n.4. The Court therefore dismisses Plaintiffs' claims for breach of an express contract and breach of the duty of good faith and fair dealing.

With respect to an implied contract, Plaintiffs allege that MultiCare entered into "contracts to provide medical and health care services" with them, and those contracts impliedly "promise[d] to protect nonpublic, [p]rivate [i]nformation given to MultiCare or that MultiCare gathers on its own from disclosure." Dkt. No. 16 at 107. Plaintiffs allege that this promise was "embodied in multiple documents," including in MultiCare's Privacy Notice and on MultiCare's website. *Id.* at 108. They contend that MultiCare breached its promise by sharing their private information with Meta and Google, and as a result, Plaintiffs "received healthcare and other services that were of a diminished value to that described in the contracts." *Id.* at 109.

Washington recognizes contracts implied in fact. *See, e.g.*, *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). "To prevail on a breach of implied contract claim, a plaintiff must demonstrate that [an] implied contract exists based on the acts of the parties involved and in light of the surrounding circumstances." *Leslie v. Fidelity Nat. Title Ins. Co.*, 598 F. Supp. 2d 1176, 1184 (W.D. Wash. 2009). Specifically, "there must be an offer; there must be an acceptance; the acceptance must be in the terms of the offer; it must be communicated to the offeror; there must be a mutual intention to contract; [and] there must be a meeting of the minds of the parties."

*Krottner v. Starbucks Corp*, 406 F. App'x 129, 131 (9th Cir. 2010) (quoting *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 301 P.2d 759, 762 (Wash. 1956)).

MultiCare first contends that Plaintiffs have not alleged the existence of a valid contract because a privacy notice like the one on which Plaintiffs rely "is *not* considered a bargained for contract, but a healthcare provider's compliance with HIPAA's federal mandates." Dkt. No. 19 at 13. Plaintiffs respond that such notices and policies can give rise to an implied contract. Dkt. No. 20 at 13.

MultiCare is correct that promising to perform a preexisting legal duty, such as complying with preexisting HIPAA obligations, is not consideration. "To bring a claim for breach of contract, a party must point to a separate duty contained in the contract that is different from the duties already imposed by law on the parties." *Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 215 (Wash. 2018); *see also, e.g.*, *In re: Premera Blue Cross Customer Data Security Breach Litig.*, No. 3:15-md-2633-SI, 2017 WL 539578, at *17 (D. Or. Feb. 9, 2017) (applying Washington law); *Stephen Haskell Law Offices, PLCC v. Westport Ins. Corp.*, No. CV-10-437-JLQ, 2011 WL 1303376, at *3 (E.D. Wash. Apr. 5, 2011) (explaining that "the performance of an act which one party is legally bound to render to the other party is not legal consideration"). While Plaintiffs allege that MultiCare promised in its website privacy policy that "[a]ll other information that is shared in a way not addressed in this notice, including uses or disclosures for marketing purposes, or disclosures of your information in exchange for some form of payment, will be made only after you give your written permission or as required by law," they do not explain how this promise differs from MultiCare's pre-existing duties. Dkt. No. 16 at 2 (emphasis omitted). Accordingly, Plaintiffs fail to establish consideration.

MultiCare also contends that Plaintiffs do not sufficiently allege a meeting of the minds as to the terms of the implied contract or that Plaintiffs paid for medical privacy (as opposed to paying

solely for medical services), and even if Plaintiffs sufficiently alleged the existence of an implied contract, they failed to allege a breach. Dkt. No. 19 at 14–15. The Court agrees. Although Plaintiffs point to the website privacy policy (and even assuming the policy promised more than what MultiCare was already obligated to do under applicable law), "they do not allege that they read or even saw [the terms], or that they understood them as an offer. Nor do they allege that they accepted the purported offer on its terms." *Krottner*, 406 F. App'x at 131. Furthermore, they do not explain what promises beyond its existing legal obligations MultiCare breached, or how. Indeed, the only alleged contract to which Plaintiffs refer in count four is the Privacy Notice, in which MultiCare states, "We are committed to protecting health information about you and are required *under federal and state law* to take steps to protect this information." Dkt. No. 16 at 108 (emphasis added); *see also Firlej v. Petrosian Esthetic Enters., LLC*, No. 2:26-CV-01030-MWC-AGR, 2026 WL 2575938, at *6 (C.D. Cal. Aug. 31, 2026) (finding that plaintiff failed to allege a meeting of the minds where she did not allege that she "reviewed Defendants' privacy policies prior to using the Website," and "even if she had, privacy policies may form the *terms* of an implied contract, but they do not alone serve as an enforceable contract without a separate meeting of the minds between the parties" (citation modified)); *Johnson v. Yuma Reg'l Med. Ctr.*, 769 F. Supp. 3d 936, 955–56 (D. Ariz. 2024) (holding that plaintiffs failed to plead breach of implied contract where they allegedly entrusted information to defendant expecting confidentiality, did not allege they read or relied on defendant's privacy policy before receiving treatment; defendant already had a duty imposed by law to protect the plaintiffs' information; and plaintiffs "failed to articulate how [defendant's] promises exceed pre-existing legal obligations"); *K.L. v. Legacy Health*, No. 3:23-CV-1886-SI, 2024 WL 4794657, at *8 (D. Or. Nov. 14, 2024) (finding that plaintiff's reference to defendant's notice of privacy practices "as the source of mutual assent is misplaced"

because "she never alleges that she relied upon or even read the [notice] before engaging Defendant's services").[9]

The Court therefore dismisses Plaintiffs' claim for breach of an implied contract with leave to amend.

**E. Breach of Fiduciary Duty**

A claim for breach of fiduciary duty requires a plaintiff to prove "(1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury." *Private Client Fiduciary Corp. v. Chopra*, No. 22-CV-00436-LK, 2023 WL 2372917, at *6 (W.D. Wash. Mar. 6, 2023) (quoting *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217 (Wash. Ct. App. 2002)). Washington has recognized that physicians owe fiduciary duties to their patients, including a duty of confidentiality. *See, e.g.*, *Loudon v. Mhyre*, 756 P.2d 138, 141 (Wash. 1988) ("The relationship between physician and patient is a fiduciary one of the highest degree involving every element of trust, confidence and good faith. This close confidential relationship is recognized by the Hippocratic Oath and in the ethical guidelines of the American Medical Association." (internal quotation marks and citation omitted)), *holding modified on other grounds by Youngs v. Peacehealth*, 316 P.3d 1035 (Wash. 2014); *Omer v. Edgren*, 685 P.2d 635, 637 (Wash. Ct. App. 1984) ("Washington also has characterized the relationship between physician and patient as fiduciary: 'The physician-patient

---

[9] In paragraph 487 of their 578-paragraph complaint, Plaintiffs "repeat the allegations contained in the [486] paragraphs above as if fully set forth herein." Dkt. No. 16 at 107. "[W]hile incorporation by reference is a useful tool to streamline pleadings, it is not intended to create guesswork as to which facts support which claims." *E.K. v. Nooksack Valley Sch. Dist.*, No. C20-1594-JCC, 2021 WL 1531004, at *3 (W.D. Wash. Apr. 19, 2021) (citation modified). The Court cannot do Plaintiffs' job for them by picking out needles of factual support for its implied contract claim from its 578-paragraph haystack. *In re Borsotti*, No. CC-19-1193-FSG, 2021 WL 1103624, at *5 (B.A.P. 9th Cir. Mar. 23, 2021) (the district court "is always a neutral arbiter that should not help any party prosecute" his or her case); *see also Todd R. v. Premera Blue Cross Blue Shield of Alaska*, 825 F. App'x 440, 442 (9th Cir. 2020) ("Under the principle of party presentation, courts must presume that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." (quotation marks and citation omitted)). This is true for Plaintiffs' other claims as well.

relationship is of a fiduciary character. The inherent necessity for trust and confidence requires scrupulous good faith on the part of the physician.'" (quoting *Hunter v. Brown*, 484 P.2d 1162, 1166 (Wash. 1971))).

Plaintiffs allege that MultiCare breached its fiduciary duty "by disclosing their Private Information to unauthorized third parties, including Meta and Google, and separately, by failing to notify Plaintiffs and Class Members of this fact,"[10] as well as failing to comply with its statutory and regulatory obligations. Dkt. No. 16 at 113–14. MultiCare contends that it could not have breached a fiduciary duty to Plaintiffs because it does not owe such a duty. Dkt. No. 19 at 16. It argues that Plaintiffs do not allege that MultiCare was the custodian of their data, and none of the statutes it allegedly violated establish a fiduciary duty. *Id.* at 17.

Washington courts do not appear to have addressed a breach-of-fiduciary-duty claim against a health care provider for the disclosure of private information. *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *12 (W.D. Wash. Mar. 4, 2025). Where the state's highest appellate court has not spoken on an issue of state law, a federal court's role is to predict what decision that court would reach. *Westport Ins. Corp. v. California Cas. Mgmt. Co.*, 916 F.3d 769, 774 (9th Cir. 2019). It appears likely that Washington would recognize a claim for breach of fiduciary duty in this context, where patients allege that a health care provider disclosed confidential health information obtained in connection with the provision of medical care. *See* Dkt. No. 16 at 80–81 (Plaintiff Small alleging that he used MultiCare's patient portal to communicate with his health care providers about medical issues, including medication dosage changes, prescription refills, and referrals for specific health issues, and "MultiCare assisted Google and Meta with intercepting Plaintiff Small's communications, including those that contained PII, PHI

[10] Plaintiffs define "Private Information" as "confidential health information," including PII and PHI. Dkt. No. 16 at 2.

and related confidential information"); *id.* at 83 (Plaintiff Patee making similar allegations); *see also Nienaber*, 2025 WL 692097, at *12 (finding that Washington would recognize that health care providers have a common law duty to refrain from disclosing confidential health information); *I.T. v. ChoicePoint LLC*, 2025 WL 2495079, at *5 (same). The Court agrees with *Nienaber* and *I.T.* that Washington courts would likely recognize such a duty. *Cf. Negron v. Ascension Health*, No. 4:24-CV-00669-JAR, 2025 WL 2710014, at *9 (E.D. Mo. Sept. 23, 2025) ("In the context of a systemwide data breach, it makes no sense to recognize the fiduciary duty of a patient's doctor but not of the entity maintaining the treatment records. In the Court's view, the level of trust inherent in the patient-provider relationship . . . necessarily extends to regulated providers and warrants fiduciary treatment."); *Smith v. Driscoll*, 162 P. 572, 572 (Wash. 1917) ("Neither is it necessary to pursue at length the inquiry of whether a cause of action lies in favor of a patient against a physician for wrongfully divulging confidential communications. For the purposes of what we shall say it will be assumed that, for so palpable a wrong, the law provides a remedy.").

As for MultiCare's custody of the data, as Plaintiffs allege, the physician-patient relationship between them and MultiCare made MultiCare a "guardian" of Plaintiffs' private health information. Dkt. No. 16 at 113. And according to the allegations in the amended complaint, but for MultiCare's installation of the data collection tools on its sites, the information would not have been transmitted to third parties. *Id.* at 18–19, 22–26, 30–57, 80–85, 96–98. In other words, there is no other plausible custodian of this data.

Although MultiCare alleges that there was no breach because Plaintiffs voluntarily disclosed their information on its public website, Dkt No. 19 at 17, even assuming without deciding that disclosure of information submitted on a public website is not actionable, the amended complaint alleges that at least some of the disclosures were made on the patient portal, Dkt. No. 16 at 80, 83.

MultiCare also contends that the HIPAA-related statutory and regulatory provisions Plaintiffs cite are insufficient to create a statutory fiduciary duty. Dkt. No. 19 at 17. This is correct.[11] But Plaintiffs allege that MultiCare's fiduciary duty arose from "the special physician-patient relationship between MultiCare and Plaintiffs," pursuant to which MultiCare undertook to safeguard Plaintiffs' confidential health information, Dkt. No. 16 at 114, and as discussed above, Washington recognizes that physicians owe fiduciary duties to their patients, including a duty of confidentiality, and would likely extend that duty to the entity maintaining confidential health information. Therefore, although HIPAA does not establish a fiduciary duty,[12] Washington common law does.

The Court accordingly denies the motion to dismiss this claim.

**F. Unjust Enrichment**

To sustain a claim for unjust enrichment, Plaintiffs must sufficiently allege: (1) "a benefit conferred upon the defendant by the plaintiff;" (2) "an appreciation or knowledge by the defendant of the benefit; and" (3) "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young*, 191 P.3d at 1262 (quoting *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. 1991)). MultiCare contends that the Court should dismiss Plaintiffs' unjust enrichment claim because "Plaintiffs do not allege facts showing they conferred a benefit to

---

[11] "Since HIPAA does not create a private right, it cannot be privately enforced . . . through an implied right of action." *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009); *see also Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016) ("HIPAA itself provides no private right of action.") (quoting *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007)); *Brown v. Allison*, No. 2:22-CV-1571, 2025 WL 3251104, at *5 (E.D. Cal. Nov. 21, 2025) (medical privacy claim failed because "there is no private right of action to enforce HIPAA or seek relief for HIPAA violations."); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 716 (D. Minn. 2023) (HIPAA "do[es] not create a *fiduciary duty* on health care providers"); *Hudes v. Aetna Life Ins. Co.*, 806 F. Supp. 2d 180, 195–96 (D.D.C. 2011) (dismissing claim that defendant breached its fiduciary duty to her by disclosing her confidential medical records because there is no private right of action under HIPAA), *aff'd,* 493 F. App'x 107 (D.C. Cir. 2012).

[12] Plaintiffs also appear to cite the Ohio Revised Code in their list of the "state and federal privacy laws" MultiCare allegedly violated. Dkt. No. 16 at 114 (referencing "R.C. 3798.04 *et seq.*").

MultiCare or how it would be unjust for MultiCare to retain what payments it did receive." Dkt. No. 19 at 18. But Plaintiffs plausibly allege that the value of their medical information is quantifiable and treated as currency in the digital marketplace, Dkt. No. 16 at 70–78, 115, and MultiCare received the benefit of "compensat[ion] from Google and Facebook in the form of enhanced advertising services and more cost-efficient marketing" at the expense of Plaintiffs' privacy, *id.* at 77. And finally, Plaintiffs sufficiently allege that it would be unjust for MultiCare to retain the financial benefits of unlawfully disclosing Plaintiffs' PHI, especially after promising that it would not disclose their information for marketing purposes without Plaintiffs' permission. *Id.* at 58, 77–79, 116–17. Accordingly, the Court denies the motion to dismiss this claim.

**G. Negligence**

To establish a claim for negligence, a plaintiff must show duty, breach, resulting injury, and a proximate cause between the breach and injury. *Pedroza v. Bryant*, 677 P.2d 166, 168 (Wash. 1984). MultiCare contends that Plaintiffs have not sufficiently alleged any of these elements. Dkt. No. 19 at 18. Plaintiffs disagree. Dkt. No. 20 at 17–21. The Court finds that Plaintiffs' amended complaint does not allege a duty, so it dismisses this claim with leave to amend.

The existence of a duty is a "threshold question" that presents "a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent." *Veridian Credit Union v. Eddie Bauer*, LLC, 295 F. Supp. 3d 1140, 1156 (W.D. Wash. 2017) (quoting *Jackson v. City of Seattle*, 244 P.3d 425, 428 (Wash. Ct. App. 2010), and *Snyder v. Med. Serv. Corp.*, 35 P.3d 1158, 1164 (Wash. 2001)). The existence of a duty may be predicated "on violation of statute or of common law principles of negligence." *Id.* (quoting *Jackson*, 244 P.3d at 428). "The plaintiff has the burden of establishing the existence of a duty." *Jackson*, 244 P.3d at 428.

MultiCare contends that Washington has not recognized a duty to protect online browsing information and "there is no duty to protect non-sensitive generic information that Plaintiffs

voluntary entered in MultiCare's public-facing website." Dkt. No. 19 at 18–19. However, Plaintiffs allege more than the disclosure of generic data or browsing information; they contend that MultiCare shared their private health information entered in its secure patient portal. *See* Dkt. No. 16 at 3. They further allege that "[u]pon accepting, storing, and controlling the Private Information of Plaintiffs and the Class in their computer systems, MultiCare owed, and continues to owe, a duty to Plaintiffs and the Class to exercise reasonable care to secure, safeguard and protect their highly sensitive Private Information from disclosure to third parties." *Id.* at 110. They aver that MultiCare's duty to safeguard their information arose, in part, from "the special relationship that existed between MultiCare and its patients, which is recognized by statute, regulations, and the common law." *Id.* at 110–11.

One problem with Plaintiffs' negligence claim is that—to the extent they allege that MultiCare's duty derives from its "special relationship" with Plaintiffs—the claim appears to be identical to their fiduciary duty claim. Under Washington law, the two claims have the same elements, and Plaintiffs assert the same facts to support them, making them redundant. *Est. of Petersen v. Bitters*, 954 F.3d 1164, 1171 (8th Cir. 2020) (district court did not err in dismissing negligence claim as duplicative of plaintiff's breach of fiduciary duty claim); *see also Amboy Bancorporation v. Bank Advisory Grp., Inc.*, 432 F. App'x 102, 111 (3d Cir. 2011).

In addition, for the same reasons courts have held that HIPAA does not create a fiduciary duty, many courts have held that it likewise cannot supply the duty for a negligence claim. *See, e.g.*, *Campanelli v. PeaceHealth Sw. Med. Ctr.*, 565 P.3d 933, 945 n.18, *as amended on denial of reconsideration* (Wash. Ct. App. May 5, 2025) (plaintiff claimed that a nurse "committed medical negligence by violating [HIPAA]", but "HIPAA does not expressly create a private cause of action to enforce a violation"), *review denied,* 577 P.3d 375 (Wash. 2025).

The problems do not end there. Plaintiffs contend in their response to the motion to dismiss that Washington's Health Care Information Act ("HCIA") provides a duty to safeguard patients' health information. Dkt. No. 20 at 18. But as they acknowledge, Dkt. No. 20 at 18, this theory is nowhere to be found in their amended complaint, and they cannot amend their complaint through their response to a motion to dismiss, *see, e.g.*, *Riser v. Cent. Portfolio Control*, Inc., No. 3:21-CV-05238-LK, 2022 WL 2209648, at *4 n.1 (W.D. Wash. June 21, 2022). Plaintiffs also allege that a duty arose from MultiCare's privacy policies, but the single paragraph of their amended complaint to which they cite in support does not allege that theory either. Dkt. No. 20 at 19 (citing Dkt. No. 16 at 58, which describes MultiCare's policies but does not allege negligence).

Plaintiffs further contend that MultiCare's own misfeasance in disclosing their personal information to third parties created a duty. Dkt. No. 20 at 19. Washington courts have held that a "duty to protect against the criminal acts of third parties can arise where the actor's own affirmative act has created or exposed [another] to a recognizably high degree of risk of harm through such misconduct." *Washburn v. City of Fed. Way*, 310 P.3d 1275, 1289 (Wash. 2013); *see also* Restatement § 302B cmt. e. Here, though, Plaintiffs do not allege that third parties engaged in criminal conduct or other misconduct. Nor do they allege that MultiCare created a "new risk of harm" to them at the hands of third parties by disclosing their data. *Robb v. City of Seattle*, 295 P.3d 212, 218 (2013); *see, e.g.*, *Buckley v. Santander Consumer USA, Inc.*, No. C17-5813, 2018 WL 1532671, at *5 (W.D. Wash. Mar. 29, 2018) (analyzing plaintiff's claim that an unauthorized disclosure of her data exposed her to identity theft or other fraudulent schemes based on the exploitation of the data); *cf. Nunley v. Chelan-Douglas Health Dist.*, 558 P.3d 513, 520–21 (Wash. Ct. App. 2024) (plaintiffs sufficiently alleged that defendant's lack of care in storing their personal data exposed them to a foreseeable risk of harm by hackers). Plaintiffs have therefore not sufficiently pleaded this theory. Finally, Plaintiffs' misfeasance theory does not fit with their

causation- and damages-related allegations that MultiCare's own intentional actions—not those acts in combination with the wrongful acts of third parties—caused their injuries. *See* Dkt. No. 16 at 82, 85.

Plaintiffs also allege duties based on the Federal Trade Commission Act ("FTCA"). Dkt. No. 20 at 18; *see also* Dkt. No. 16 at 7–8, 60–67. MultiCare denies that this statute provides the basis for a negligence-based duty. Dkt. No. 19 at 19. "Although Washington does not permit negligence per se claims, it does allow a duty to be formulated from a statute." *Guy v. Convergent Outsourcing, Inc.*, No. C22-1558-MJP, 2023 WL 4637318, at *3 (W.D. Wash. July 20, 2023); *see also Jackson*, 244 P.3d at 428. To determine if a statute imposes a legal duty, Washington follows the Restatement (Second) of Torts § 286 (1965). *See Schooley v. Pinch's Deli Market, Inc.*, 951 P.2d 749, 752 (Wash. 1998); *Hansen v. Friend*, 824 P.2d 483, 485 (Wash. 1992). The Restatement provides:

> The court may adopt as the standard of conduct of a reasonable [person] the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> (a) to protect a class of persons which includes the one whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has resulted, and
>
> (d) to protect that interest against the particular hazard from which the harm results.

Restatement (Second) of Torts § 286 (1965). Plaintiffs cite no cases holding that Section 5 of the FTC creates a duty in this context. *See* Dkt. No. 20 at 18–19. And neither the agency bulletin nor the blog Plaintiffs cite is "a legislative enactment or an administrative regulation" as set forth in the Restatement. Restatement (Second) of Torts § 286 (1965); *see also* Dkt. No. 16 at 7–8; *Guy*, 2023 WL 4637318, at *4–5 (holding that plaintiffs failed to show that Section 5 of the FTCA

imposed a duty to prevent a data breach). In the absence of an identified duty, the Court dismisses Plaintiffs' negligence claim with leave to amend.

**H. Invasion of Privacy**

"Washington common law recognizes a 'protectable interest in privacy [that] is generally held to involve four distinct types of invasion: intrusion, disclosure, false light and appropriation.'" *Buckley*, 2018 WL 1532671, at *7 (quoting *Eastwood v. Cascade Broad. Co.*, 722 P.2d 1295, 1296 (Wash. 1986)); *see also Reid v. Pierce Cnty.*, 961 P.2d 333, 339 (Wash. 1998). Plaintiffs allege the first two theories, intrusion and disclosure. Dkt. No. 16 at 117–19.

1. Intrusion Upon Seclusion

To prevail on a claim for invasion of privacy by intrusion upon seclusion, "a plaintiff must prove that the defendant (1) deliberately intruded; (2) into the plaintiff's solitude, seclusion, or private affairs; (3) in a manner that would be highly offensive to a reasonable person." *Armijo v. Yakima*, No. C11-3114-TOR, 2012 WL 2576624, at *2 (E.D. Wash. July 3, 2012); *see also Fisher v. State ex rel. Dep't of Health*, 106 P.3d 836, 840 (Wash. Ct. App. 2005). Plaintiffs' amended complaint alleges that that "[i]n sending and in acquiring the content of Plaintiffs' and Class Members' communications relating to the browsing of MultiCare's Web Properties," MultiCare committed a "knowing intrusion into a private, place, conversation, or matter that would be highly offensive to a reasonable person." Dkt. No. 16 at 99; *see also id.* at 118 (alleging that MultiCare made a willful and intentional unauthorized disclosure of Plaintiffs' private information to Meta or Google that "would be highly offensive to a reasonable person").

MultiCare contends that there can be no intrusion upon seclusion because Plaintiffs "voluntarily provid[ed] MultiCare with [s]ensitive [i]nformation" and "the alleged intrusion, if any, was carried out by third parties, Meta or Google, not MultiCare." Dkt. No. 19 at 21–22. Plaintiffs counter that MultiCare was the one that wrongfully "intruded on Plaintiffs' seclusion by

planting code on Plaintiffs' web browsers that instructed their computers to send their Private Information secretly and automatically to AdTech companies." Dkt. No. 20 at 22 (citing Dkt. No. 16 at 118).

Although Plaintiffs allege that MultiCare committed a wrongful intrusion by "sending and . . . acquiring" their sensitive information, Dkt. No. 16 at 99, MultiCare acquired the data when Plaintiffs voluntarily provided it by browsing and conducting other activities on MultiCare's website, *id.* at 3. Plaintiffs do not contend that MultiCare wronged them simply by obtaining this data. "Because Plaintiff[s] voluntarily shared [their] information with Defendant, there was no *intrusion* upon [their] solitude, seclusion, or private affairs by Defendant." *Nienaber*, 733 F. Supp. 2d at 1089. Plaintiffs rely on two cases holding that sharing health data is sufficient to support an invasion of privacy claim, Dkt. No. 20 at 21–22, but neither holding was based on an intrusion theory. Rather, they were based on a disclosure theory. *See Doe v. Virginia Mason Med. Ctr.*, No. 19-2-26674-1 SEA, 2024 WL 3517759, at *7 (Wash. Super. June 06, 2024) ("a reasonable inference to draw[] from the facts presented is that Virginia Mason allowed health-related information to be *shared* with Facebook and Google and did so even though, at least at some point, it affirmatively said it would not share such information with third parties" (emphasis added)); *Guy*, 2023 WL 4637318, at *7 (finding that plaintiffs "sufficiently alleged an invasion of privacy claim" based on their allegations that defendant disclosed their PII). Similarly, here, Plaintiffs' complaint about the wrongful "sending" of the data to third parties is a disclosure issue, discussed below, not an intrusion issue. The Court therefore dismisses Plaintiffs' intrusion upon seclusion claim with leave to amend.

2. <u>Public Disclosure</u>

The Restatement (Second) of Torts § 652D provides the general rule for invasion of privacy based on disclosure in Washington:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

*Reid*, 961 P.2d at 338. Thus, "[t]o prevail on a public disclosure of private facts claim, a plaintiff must prove that the defendant (1) intentionally disclosed private facts; (2) that were not of legitimate concern to the public; (3) which disclosure would be highly offensive to a reasonable person." *Armijo*, 2012 WL 2576624, at *2. Publicity is an essential element of this claim. *Id.* (finding sufficient allegations that "Defendant intentionally disclosed highly private marital-related information contained in [the plaintiff's] personal diary to members of its staff and to other members of the public by placing the diary on a box with the pages open" (citation modified)).

At issue here is the required degree of publication. MultiCare argues that Plaintiffs' claim fails because MultiCare did not disclose their information to the public at large. Dkt. No. 19 at 22–23. Plaintiffs respond that they have sufficiently alleged this theory even if MultiCare did not broadly disclose their private information. Dkt. No. 20 at 23. The amended complaint alleges that MultiCare divulged their private information to Meta and Google, but does not allege that the disclosures occurred more broadly. Dkt. No. 16 at 117–19.

"[P]ublicity 'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Emeson v. Dep't of Corr.*, 376 P.3d 430, 442 (Wash. Ct. App. 2016) (quoting Restatement (Second) of Torts § 652D cmt. a); *see also Dotson v. Wal-Mart Stores, Inc.*, 165 F.3d 27 (6th Cir. 1998) ("[T]here is no cause of action for unreasonably publicizing another's private life, unless the disclosure is communicated to the public at large." (citing Restatement (Second) of Torts § 652D cmt. A)). Plaintiffs do not allege that MultiCare has disclosed their data

to the public at large, or disseminated their information in such a way that it is substantially certain to become public knowledge. Disclosing the information solely to Facebook and Meta through data collection tools, without allegations of further disclosures, is insufficient to state a claim. *See, e.g.*, *I.T. v. ChoicePoint LLC*, 2025 WL 2495079, at *5 (allegations that plaintiffs' information was "shared with Google and Facebook and that Plaintiffs then began seeing targeted online advertisements for addiction treatment services" failed to allege information "was communicated to the 'public at large' sufficient to support a claim for invasion of privacy" (citation modified)); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1089–90 (W.D. Wash. 2024) ("Plaintiff does not allege that the information shared by Defendant will become available to the public *at large*; to the contrary, Plaintiff alleges that the information is shared with Facebook and, in turn, is being used by Facebook to target Plaintiff herself."); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (applying the Restatement (Second) of Torts, § 652D, cmt. a); *see also Castillo*, 2024 WL 4785136, at *14. The Court therefore dismisses this claim with leave to amend.

**I. Washington Consumer Protection Act**

To prevail on a CPA claim, a plaintiff must prove (i) an unfair or deceptive act or practice, (ii) occurring in trade or commerce, and (iii) affecting the public interest, as well as (iv) an injury to his or her business or property, and (v) causation. *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009). "[A] plaintiff can establish that the lawsuit would serve the public interest by showing a likelihood that other plaintiffs have been or will be injured in the same fashion." *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1108 (Wash. 2015).

MultiCare contends that the Court should dismiss Plaintiffs' CPA claim because (1) disclosing their personal information to third parties was not "an unfair or deceptive act or practice" under the statute, (2) Plaintiffs do not plausibly allege any impact on the public interest,

(3) they have failed to allege an unfair or deceptive act that was a proximate cause of their injuries, and (4) they do not sufficiently allege an injury to their business or property. Dkt. No. 19 at 23–25; *see also* Dkt. No. 25 at 12.

The Court begins and ends with injury to business or property. Plaintiffs point to their loss of privacy, Dkt. No. 20 at 20, 26, but a loss of privacy is a "personal" injury rather than an injury to business or property for purposes of a CPA claim, *Gragg v. Orange Cab Co.*, 942 F. Supp. 2d 1111, 1119 (W.D. Wash. 2013). Plaintiffs also contend that they have experienced "diminution of value of the[ir] Private Information" as well as "lost time and opportunity costs associated with attempting to mitigate the actual consequences of the disclosure of [their] Private Information[.]" Dkt. No. 16 at 82–83; *id.* at 85–86. But these allegations are not plausible. First, how is private information "property" for purposes of the CPA? Second, even assuming it is property, how is Plaintiffs' private information any less valuable now than it was before the disclosure? And what specific costs have Plaintiffs incurred to mitigate this limited disclosure to Meta and Google for advertising purposes—other than the costs of filing this lawsuit, which do not constitute harm to business or property? *Panag*, 204 P.3d at 901 (noting that the cost of instituting a CPA action cannot alone constitute injury). The Court respectfully disagrees with other courts that seemingly have found bare allegations of diminution in the value of personal data to sufficiently establish harm to property without scrutinizing the issue further, and agrees with the courts that have found otherwise, especially *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2025 WL 82211, at *12–13 (N.D. Cal. Jan. 13, 2025). *See also Howell v. Oracle Am., Inc.*, No. 6:24-CV-05560-JDA-WSB, 2025 WL 2795643, at *8 (D.S.C. July 11, 2025), *report and recommendation adopted,* No. 6:24-CV-05560-JDA, 2025 WL 2620537 (D.S.C. Sept. 11, 2025); *Nienaber*, 2025 WL 692097, at *15. Here, nothing in the complaint indicates that the injury to Plaintiffs is anything other than personal injury.

Accordingly, the Court grants the motion to dismiss Plaintiffs' CPA claim with leave to amend.

**J. Injury Resulting from Health Care, Section 7.70 of the Revised Code of Washington**

Plaintiffs allege that MultiCare violated Section 7.70 of the Revised Code of Washington "by departing from the accepted standard of care when it violated federal and state statutory obligations, as well as common law obligations, in installing and configuring Meta and Google Collection Tools on its Web Properties to record, store, and transmit patient information for the purpose of increasing profitability." Dkt. No. 16 at 122. They contend that they did not consent to the third-party disclosures, which violated MultiCare's promises of confidentiality. *Id.*

To recover damages for a claim under Section 7.70, a plaintiff must allege that the defendant (1) "failed to exercise the degree of care, skill, and learning of a reasonably prudent health care provider," (2) "such failure proximately caused their injury," and (3) their injury occurred "as a result of health care." *M.N. v. MultiCare Health Sys., Inc.*, 541 P.3d 346, 352 (Wash. 2024); *see also Reagan v. Newton*, 436 P.3d 411, 416 (Wash. Ct. App. 2019); Wash. Rev. Code § 7.70.030. The statute does not define "health care," but Washington courts have defined it as "the process in which a physician is utilizing the skills which he had been taught in examining, diagnosing, treating, or caring for the plaintiff as his patient." *M.N.*, 541 P.3d at 352 (citation modified). Covered health care providers include physicians as well as "nonhuman actors, such as a 'hospital,' 'facility, or institution' that employs a person providing health care." *Id.* (quoting Wash. Rev. Code § 7.70.020(3)).

MultiCare contends that Plaintiffs did not suffer an injury as a result of its conduct, failed to allege an express or implied promise MultiCare breached, and consented to MultiCare's data collection by using the website. Dkt. No. 19 at 26. Plaintiffs respond that "Washington courts recognize 'a tort action exists under 7.70.030(1) for damages resulting from the unauthorized

disclosure of confidential information related to health care and obtained within the physician-patient relationship.'" Dkt. No. 20 at 26 (quoting *Berger v. Sonneland*, 26 P.3d 257, 266 (Wash. 2001)). But "related to health care" is not the test. Instead, it is whether the alleged injury resulted "as the result of health care." Wash. Rev. Code § 7.70.030. Specifically, "when the conduct complained of is part of the health care provider's efforts to treat and care for a patient's medical needs, the injury occurs as a result of health care and the claim falls under chapter 7.70[.]" *Reed v. ANM Health Care*, 225 P.3d 1012, 1015 (Wash. Ct. App. 2008). That is not the case here. Defendants allegedly used the trackers to optimize ads and marketing, but not to treat, diagnose, or care for patients. *See Nienaber*, 2025 WL 692097, at *14–15 (dismissing Section 7.70 claim because defendants did not use third-party trackers to treat, diagnose, or care for patients). Accordingly, the Court dismisses this claim with leave to amend.[13]

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART MultiCare's motion to dismiss. Dkt. No. 19. The Court dismisses Plaintiffs' claims for breach of an express contract and breach of the implied duty of good faith and fair dealing without leave to amend, and dismisses their claims for breach of an implied contract, negligence, invasion of

[13] Even if Plaintiffs had stated a Section 7.70 claim (they have not), MultiCare is correct that Section 7.70 would preempt Plaintiffs' other state common law causes of action, at least insofar as any of those claims seek damages. Dkt. No. 19 at 26–27; *see Branom v. State*, 974 P.2d 335, 338 (Wash. Ct. App. 1999) ("RCW 7.70 modifies procedural and substantive aspects of *all* civil actions for damages for injury occurring as a result of health care, regardless of how the action is characterized"; holding that negligent infliction of emotional distress and fiduciary duty claims were barred by plaintiff's assertion of a Section 7.70 claim); *Rapp v. NaphCare Inc.*, No. 3:21-CV-05800-DGE, 2025 WL 90918, at *14 (W.D. Wash. Jan. 14, 2025) ("Plaintiffs cannot maintain a common law claim against NaphCare for injuries resulting from healthcare (be it negligence or gross negligence) independent of their statutory claim."), *clarified on denial of reconsideration,* 2025 WL 989846 (W.D. Wash. Apr. 2, 2025).

privacy, violation of the CPA, and injury resulting from health care with leave to amend. The Court denies the motion with respect to Plaintiffs' other claims.

The Court also notes that although it has granted leave to amend certain claims, it expects Plaintiffs to exercise due care in determining whether to file an amended complaint. Plaintiffs took a "kitchen sink" approach with their claims in the amended complaint—in other words, they "put before the court all conceivable claims, with the hope that the court would sort and sift through them in search of a colorable one." *Pelphrey-Weigand v. Res. for Hum. Dev., Inc.*, 818 F. Supp. 3d 685, 694 (E.D. Pa. 2026) (quoting *Malladi v. Brown*, 987 F. Supp. 893, 900 (M.D. Ala. 1997)). As other courts have observed, this strategy forces courts to spend an "inordinate amount of time" sorting through plaintiffs' claims at the expense of other individuals waiting for rulings in their cases, "many of whom may truly have been the victims of serious wrongs":

> "[Plaintiffs'] attorneys, not the court, have the responsibility of weeding out frivolous and questionable claims. . . ."
>
> Many plaintiffs, in all likelihood, are betting that our overworked courts see the extensive briefing on a lengthy complaint and just throw up the white flag, identifying some vague factual disputes, and leaving it all for a jury to sort out. That same difficulty courts face is faced by defendants, who are forced to defend themselves on innumerable unrelated fronts, presenting serious challenges in drafting a cohesive [dispositive motion]. Some of those same plaintiffs are likely also betting that this . . . scattershot approach will drive up expected costs to engage in fact discovery and brief summary judgment by defendant in such a way that it may facilitate a more lucrative pre-discovery settlement offer. At the very least, these sorts of pleadings drive up plaintiff's counsel's lodestar if they are someday awarded attorneys' fees.

*Id.* at 694–96 (quoting *Malladi*, 987 F. Supp. at 900) (footnote omitted). This Court echoes the warning in *Malladi* that this approach can be self-defeating: "By lumping [their] [questionable] claims with [their] arguably colorable claims, both [Plaintiffs] and [their] lawyers risk losing all credibility with the court." *Malladi*, 987 F. Supp. at 901. Any amended complaint must be filed within 21 days.

In light of this order, the parties are ordered to file an updated Joint Status Report within 28 days that addresses their proposed deadlines for filing a motion for class certification and related discovery.

Dated this 23rd day of October, 2026.

Lauren King
United States District Judge